**quinn emanuel** trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

December 20, 2016

Re:  **Discovery Conference – December 22, 2016 at 3:00 p.m.**
*PAH Litigation Trust v. Water Street Healthcare Partners, L.P., et al.*
Adversary Proceeding No. 15-51238-KG

Dear Judge Gross:

Plaintiff PAH Litigation Trust (the "Trust") seeks your assistance to compel third-party Ernst & Young LLP ("EY") to produce two narrow categories of documents responsive to the Trust's subpoena, served four-and-a-half months ago, on August 3, 2016. ECF No. 268. Although the documents sought are clearly relevant, EY has refused to produce them.

EY played a critical role in concealing the deceptive accounting practices that led to the sale of debtor Physiotherapy Associates Holdings, Inc. ("Physio") and the related fraudulent transfers to the Defendants. In the months preceding the sale, EY was hired by one of the sellers, defendant Water Street, to provide a "quality of earnings" report—a bespoke report designed to assure potential bidders that Physio's reported revenues were reliable. After purporting to examine Physio's financials and other information, EY issued its report, opining that Physio's reported net revenue was accurate. EY then provided that report to the parties interested in purchasing Physio, including the buyer Court Square, in exchange for a fee of $1.1 million, paid by Physio. Defendants have made clear that they intend to rely heavily on EY's role in the transaction to support their position that Physio's net revenue was not overstated.

The Trust subpoenaed EY's documents months ago, when discovery commenced, given the obvious relevance of information relating to EY's report. In order to avoid any claims of undue burden, the Trust agreed at the outset of the parties' negotiations to narrow its subpoena (without prejudice to follow-on requests for additional documents) to two specific categories of documents, most of which **only** EY would possess: (1) the work papers that EY created in connection with its engagement, and (2) EY's internal and non-party communications regarding the engagement, limited to five specific EY custodians who did most of the work, and limited to the finite period between January 1, 2010 and April 30, 2012.

Despite the reasonableness of these narrow requests and the limited number of documents they seek, EY has failed to produce them. Initially, EY said it would produce its work papers but nothing else, making unsupportable claims that communications regarding its report were irrelevant. Then, after months of negotiations, EY finally agreed to stand down on its relevance objections—but then lodged several new objections that lack merit, including an improper demand that its production be "staged" over an indefinite time period and a last-minute condition that the Trust reimburse it for all of its fees and costs. There is no legal basis for EY's request for cost-shifting, and there is no time, given EY's prior extensive delay, to further delay its compliance or drag out this endless negotiation process. Document discovery is to be substantially completed by January 31, 2017, under the Court's Scheduling Order.

ECF No. 284.

We respectfully request the Court's intervention. Specifically, the Trust seeks an Order from this Court requiring EY to produce its work papers by January 2, 2017 and the requested communications by January 15, 2017, and that EY's request to be reimbursed for attorneys' fees and costs be denied.

## I. THE DOCUMENTS AT ISSUE ARE RELEVANT AND DISCOVERABLE

Even though EY has failed to produce any documents, there is no genuine dispute from EY at this point that the narrow categories of documents sought by the Trust are relevant.

*First,* Defendants have put EY's role and report at issue by relying on them. According to Defendants, "[i]f the books were cooked … it is unfathomable that management would have … brought in a second expert, EY, to examine management's revenue and accounts receivable estimates." ECF No. 163 at p. 28; *see also* ECF No. 106 at p. 64 ("That bidders were provided access … to the professionals at … EY .. is antithetical to the notion that any party … intended to hinder, delay, or defraud anyone."). The Trust is entitled to discovery into EY's documents relating to its report and role in the transaction in light of Defendants' reliance on EY's report for their defenses. *See Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *3 (S.D.N.Y. Oct. 24, 2014) (compelling EY to produce work papers and communications "[c]oncerning the auditing of" a client" because "it will give pictures of [the company's] financial state.").

*Second,* EY's work papers and communications are also highly relevant to understanding the Debtor's and Defendants' state of mind. EY acted as the agent for Physio and Water Street in connection with the sale. The Statement of Work executed by Water Street provided that EY would "work under the supervision of" Water Street and Physiotherapy and perform various "Seller Support Services in connection with [Water Street's] planned divestiture of Physiotherapy." Physio paid for EY's services. EY's documents and communications will show why its report was erroneous, either as a result of carelessness, conscious disregard of the truth, or intentional misconduct. It may also reveal the state of mind of Physio and Water Street. Finally, under principles of agency, EY's own state of mind regarding Physio's accounting practices may be imputed to its principals, Physio and Water Street, and probative of their knowledge. *See Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 633 F. Supp. 386, 400 (D. Del. 1986), ("Knowledge … of a corporation's agent ordinarily are imputed to the corporation.")

## II. <u>NEITHER COST SHIFTING NOR FURTHER DELAY IS APPROPRIATE</u>

On November 29, the Trust proposed that EY search the custodial files of just 5 custodians, using 24 search strings, to locate relevant non-party communications. EY has never suggested that those search strings or custodians are overbroad or otherwise improper. EY has now essentially conceded that the communications sought by the Trust are relevant and discoverable. *See* Ex. A at pp. 2-3. But EY is still refusing to produce the documents based on two spurious objections.

*First,* EY is now demanding that discovery proceed in additional, indefinite stages. According to EY, it should only have to produce its work papers for now; EY would then consider producing its communications later, after the Trust reviews the work papers. But EY has never articulated any basis for this delay tactic. EY has been promising to produce its work papers for months but, inexplicably,

has never done so. *Id.* at p. 4. The deadline for substantial completion of documents is January 31, 2017, just over a month from now. Dkt. 284. There is no time to wait for EY to produce its work papers only to then have to re-start the process of negotiating over its communications. Nor has EY identified any legal basis for refusing to produce its relevant communications.

*Second,* this is not a case where cost-shifting would be appropriate, for several reasons.

(a) EY had a relationship to and profited from the underlying transaction at issue, and "could have anticipated that such transaction could potentially spawn litigation or discovery." *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) (denying request for reimbursement of $229,763.43 because third party was involved in underlying transaction). EY has refused to say whether it is entitled to have its fees and costs reimbursed by Water Street under the terms of its $1.1 million engagement agreement. *Id.* at p. 1. Defendants have not produced that agreement either, despite the Trust's requests.

(b) Cost shifting is only available under Rule 45 for "significant expense resulting from compliance." Here, no one can know what EY's response costs will actually be because EY has not even run the Trust's search strings. But there is no dispute that EY earned revenue of *$28.7 billion* in 2015. Whatever the costs of running 24 search strings on 5 custodians may be, they are not "significant" for a company with annual revenue of more than $28 billion. *See, e.g., Cornell v. Columbus McKinnon Corp.*, 2015 WL 4747260, at *2 (N.D. Cal. Aug. 11, 2015) (denying third-party FedEx's motion to shift costs of $227,597 because they are "are dwarfed by FedEx's profit figures [of $2.57 billion], and therefore weigh in favor of finding them insignificant."). This is especially true in this case when compared to the limited resources and function of a litigation trust formed pursuant to a Chapter 11 bankruptcy plan. *See In re World Trade Ctr. Disaster Site Litig.*, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) (denying fee shifting where "the nonparty can more readily bear the costs.").

(c) Any "significant" expense that EY is anticipating based on a document-by-document review is unnecessary. The Court has issued a Protective Order that will protect the confidentiality of any documents that EY produces. EY has not articulated any concern that the search strings will capture privileged documents, but the Court has already accounted for that risk, in any event, by issuing a Rule 502(d) Order allowing for the claw-back of any such documents. Thus, there is no need for an extensive document review by EY—and if it wishes to conduct such a review, that is not a cost that the Trust should have to bear. *See G & E Real Estate, Inc. v. Avison Young–Washington, D.C., LLC*, No. CV 14-418 (CKK), at *5 (D.D.C. Mar. 30, 2016) (cost shifting denied where third party insisted on document-by-document review when it could have used a clawback arrangement to address privilege issues).

Accordingly, we hereby request that EY be ordered to produce its work papers by January 2, 2017 and its communications by January 15, 2017, and that EY's request to be reimbursed for attorneys' fees and costs be denied.

Respectfully submitted,

/s/

R. Brian Timmons