## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PHYSIOTHERAPY HOLDINGS, INC., *et al.*,<br><br><div align="right">Debtors.</div> | Chapter 11 Case<br>Case No. 13-12965 (KG)<br>(Jointly Administered) |
| PAH LITIGATION TRUST,<br><br><div align="right">Plaintiff,</div><br>v.<br><br>WATER STREET HEALTHCARE PARTNERS, L.P., WS ASSOCIATE CO-INVEST PARTNERS, LLC, WATER STREET HEALTHCARE MANAGEMENT, L.P., WIND POINT PARTNERS IV, L.P., WIND POINT IV EXECUTIVE ADVISOR PARTNERS, L.P., WIND POINT ASSOCIATES IV, LLC, WIND POINT INVESTORS IV, L.P., *et al.*,<br><br><div align="right">Defendants.</div> | Adversary Proceeding No. 15-51238 (KG) |

### OPENING BRIEF IN SUPPORT OF THE PAH LITIGATION TRUST'S
### MOTION FOR LEAVE TO AMEND ITS COMPLAINT

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................4

I. THE COURT SHOULD GRANT LEAVE TO AMEND THE TRUST'S COMPLAINT TO SEEK PUNITIVE DAMAGES IN CONNECTION WITH ITS PUFTA CLAIM.....................................................................................6

    A. Good Cause Exists For The Trust To Seek Punitive Damages ..................6

    B. Justice Requires That The Trust Be Allowed To Seek Punitive Damages....................................................................................................13

II. THE COURT SHOULD GRANT LEAVE TO AMEND THE COMPLAINT TO ADD DEFENDANTS' GENERAL PARTNERS AS DEFENDANTS .......................................................................................15

    A. Good Cause Exists To Join The Proposed Additional Defendants............15

    B. Justice Requires That The Trust Be Permitted To Add The Existing Defendants' Ultimate General Partners As Defendants...........................17

CONCLUSION.......................................................................................................20

DOCS_DE:213799.1 99891/001

# TABLE OF AUTHORITIES

Page

## Cases

*Adams v. Gould Inc.*,
   739 F.2d 858 (3d Cir. 1984) ........................................................................4

*Angel v. Tokyo Hibachi Cuisine, Inc.*,
   2015 WL 2364769 (D.N.J. May 14, 2015) ...................................................19

*In re Appleseed's Intermediate Holdings, LLC*,
   470 B.R. 289 (D. Del. 2012) .......................................................................6

*Butz v. Lawns Unlimited Ltd.*,
   568 F. Supp. 2d 468 (D. Del. 2008) ............................................................13

*Cornell Univ. v. Illumina, Inc.*,
   2016 WL 3046258 (D. Del. May 27, 2016) ...............................................5, 12

*Cty. of Lackawanna v. Verrastro*,
   2009 WL 3825873 (Ct. Comm. Pl. June 24, 2009) ......................................14

*Hutchison ex rel. Hutchison v. Luddy*,
   582 Pa. 114 (2005) ...............................................................................13, 14

*ICU Med., Inc. v. RyMed Techs., Inc.*,
   674 F. Supp. 2d 574 (D. Del. 2009) .....................................................4, 5, 12

*Jackson v. Lehigh Valley Physicians Grp.*,
   2010 WL 3855274 (E.D. Pa. Sept. 29, 2010) ................................................4

*Klein v. Weidner*,
   729 F.3d 280 (3d Cir. 2013) .......................................................................13

*Lomas v. Kravitz*,
   130 A.3d 107 (Pa. Super. 2015) .................................................................13

*Long v. Wilson*,
   393 F.3d 390 (3d Cir. 2004) .........................................................................5

*Luellen v. Luellen*,
   2013 WL 1182958 (W.D. Pa. 2013) ............................................................14

*MacQueen v. Union Carbide Corp.*,
   2014 WL 1338729 (D. Del. Apr. 1, 2014) .....................................................4

*Nelson v. Biogen Idec, Inc.*,
   2016 WL 3267286 (D.N.J. June 7, 2016) ....................................................4, 5

*New England Interconnect Sys., Inc. v. AEES, Inc.*,
   2011 WL 2118853 (W.D. Pa. May 27, 2011) ..........................................17, 20

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*,
   106 F. Supp. 2d 761 (D.N.J. 2000) ...............................................................5

ii

*Sabatino v. Union Twp.*,
   2013 WL 1622306 (D.N.J. Apr. 15, 2013) .................................................5

*Sandvik AB v. Advent Int'l Corp.*,
   83 F. Supp. 2d 442 (D. Del. 1999), *aff'd*, 220 F.3d 99 (3d Cir. 2000) ........17

*Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*,
   1987 WL 7189 (D. Del. Feb. 5, 1987) .....................................................19

*State Bd. of Admin. of Florida v. Cendant Corp.*,
   2003 WL 26555890 (D.N.J. Aug. 19, 2003) .............................................19

*Stemrich v. Zabiyaka*,
   2013 WL 3340960 (M.D. Pa. July 2, 2013) ...............................................13

*Trask v. Olin Corp.*,
   2016 WL 1255302 (W.D. Pa. Mar. 31, 2016) ...........................................13

*Zygmuntowicz v. Hosp. Invs., Inc.*,
   151 F.R.D. 53 (E.D. Pa. 1993) .................................................................14

## Statutes

11 U.S.C. § 548 .................................................................................................2

Del. Code Ann. tit. 6, § 15-306 .......................................................................17

Del. Code Ann. tit. 6, § 15-307(b) ..................................................................16

Fed. R. Bankr. P. 7015 .....................................................................................1

Fed. R. Bankr. P. 7016 .....................................................................................1

Fed. R. Civ. P. 15(a)(2) .....................................................................................4

Fed. R. Civ. P. 16(b)(4) .....................................................................................5

Plaintiff PAH Litigation Trust (the "Trust") respectfully submits this Opening Brief in support of its motion, pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding under Rules 7015 and 7016 of the Federal Rules of Bankruptcy Procedure, for leave to file an amended complaint (the "Motion"), a copy of which is attached to the Trust's Motion as Exhibit A, (i) adding to its prayer for relief a request for punitive damages under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"); and (ii) joining two entities as additional defendants: (a) Water Street Healthcare Partners, LLC, which is the ultimate general partner of Defendants Water Street Healthcare Partners, L.P. and Water Street Healthcare Management, L.P. (collectively with Defendant WS Associate Co-Invest Partners, LLC, "Water Street"), and (b) Wind Point Advisors, LLC, which is the ultimate general partner of Defendants Wind Point Partners IV, L.P., Wind Point IV Executive Advisor Partners, L.P., and Wind Point Investors IV, L.P. (collectively with Defendant Wind Point Associates IV, LLC, "Wind Point" and, together with Water Street, "Defendants").

## PRELIMINARY STATEMENT

The Trust's original complaint in this case shows how the Debtor falsified its financial statements so that it could be sold at an inflated purchase price; used those falsified financials to borrow hundreds of millions of dollars that could never be repaid; and then immediately funneled $248.6 million in cash to its controlling shareholders, Defendants Water Street and Wind Point.  This transfer rendered the Debtor ("Physiotherapy" or the "Company") insolvent the moment that it occurred.  Less than 12 months later, the Company defaulted on the promissory notes that financed the transfer to Defendants and, not long thereafter, filed for bankruptcy.  After the Bankruptcy Plan was confirmed, the Litigation Trust filed fraudulent transfer claims against Water Street and Wind Point, seeking the return of the funds that were transferred to them.

1

Defendants moved to dismiss the Trust's complaint, challenging (among other things) the sufficiency of the Trust's allegations of fraud. On June 20, 2016, the Court denied the bulk of that motion. The Court explained that "the Complaint clearly alleges numerous accounting inaccuracies that could potentially lead a reasonable fact finder to conclude that the Debtor's shares were grossly overvalued. It is also plausible to believe that these inaccuracies were far from accidental." D.I. 250 at 34. The Court ruled that the Trust's claims for actual fraudulent transfer under section 548 of the Bankruptcy Code and constructive fraudulent transfer under Pennsylvania law should proceed.

The parties then began discovery, which has involved the production of over 4 million documents thus far. Based on information that has come to light, the Trust now seeks to amend its Complaint in two respects. *First*, while only *the Debtor's* fraudulent intent need be shown to establish the Trust's actual fraudulent transfer claim, recently-obtained evidence suggests that *Defendants themselves* both participated in and concealed the fraud. Documents show that Defendants' own sell-side diligence firm, Ernst & Young LLP ("E&Y"), ███████████████████████████████████████ ████████████████████████████████, but Defendants chose to ignore them rather than correct the financial statements upon which the Company was sold and financed. In fact, they *further* inflated those financial statements, and then worked to conceal the fraud. In one internal email—which Defendants had originally redacted—███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████. In another, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████." Documents also show that Defendants ███████████████ ███████████████████████████████████████████████████████████

2

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮" And documents show that Defendants ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

The evidence produced in discovery, as discussed in further detail below, reveals highly culpable conduct on the part of the Defendants. Accordingly, the Trust requests leave to amend its Complaint to add a prayer for punitive damages under its PUFTA claim—a remedy which is available under this Pennsylvania statute, as the Third Circuit has held. This requested amendment far surpasses the lenient "not clearly futile" standard applicable here.

*Second,* the Trust has also discovered that the existing Defendants may have difficulty satisfying a judgment in this case, and that some have been actively liquidating and distributing their assets during the pendency of this case. The Trust thus seeks leave to join two related entities as additional defendants, Water Street Healthcare Partners, LLC and Wind Point Advisors, LLC. These entities are the managing general partners of the existing Wind Point and Water Street Defendants, and they are automatically responsible for the existing partnership Defendants' liabilities under applicable Delaware partnership law. They have additional assets that could be used to satisfy a judgment. Requiring the Trust to bring its claims against these additional proposed defendants in a separate action would be inefficient for the Court and parties. Accordingly, the Trust requests leave to add these related entities as defendants in this case.

These amendments do not significantly change the complexion of this case—the new proposed defendants are closely related to the existing Defendants and the prayer for punitive damages turns on allegations of fraud that have long been at issue. Permitting

3

these amendments now, before depositions have commenced, will not cause any prejudice and will neither lead to delay nor require any changes in the schedule. The amendments are also far from futile.

Accordingly, the Trust respectfully requests that the Court grant the Trust leave to file the Proposed Amended Complaint attached to the Trust's Motion as Exhibit A.

## ARGUMENT

Under Federal Rule of Civil Procedure 15(a), the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2) ("Rule 15"). The "liberal pleading philosophy of the federal rules limits the district court's discretion to deny leave to amend." *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984); *see also ICU Med.*, 674 F. Supp. 2d at 577 ("The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities."); *Nelson v. Biogen Idec, Inc.*, 2016 WL 3267286, at *2 (D.N.J. June 7, 2016) ("The legal standard for amending pleadings is extremely liberal."). It is, accordingly, the opposing party's burden to establish that a proposed amendment is impermissible under Rule 15. *MacQueen v. Union Carbide Corp.*, 2014 WL 1338729, at *2 (D. Del. Apr. 1, 2014). Leave may be denied only if the opposing party establishes that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Jackson v. Lehigh Valley Physicians Grp.*, 2010 WL 3855274, at *1 (E.D. Pa. Sept. 29, 2010) (quotation omitted).

Under the first prong, courts examine a plaintiff's motives for amendment and will deny leave only if the timing of the plaintiff's request reflects bad faith, or places an unwarranted burden on the court or the opposing party. *Adams*, 739 F.2d at 868. "The passage of time, without more, does not require that a motion to amend a complaint be

4

denied." *Id.* As to futility, the opposing party must show that the amendment is "***clearly***

futile," meaning that the proposed amendment is "frivolous or advance[s] a claim or

defense that is legally insufficient on its face[.]" *Nelson*, 2016 WL 3267286, at *4

(quotations omitted; emphasis in original). Courts place a "heavy burden" on a party

opposing amendment on the grounds of futility. *Pharm. Sales & Consulting Corp. v.

J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). To establish undue

prejudice, the opposing party must prove that the amendment would "(1) require the

[non-moving party] to expend significant additional resources to conduct discovery and

prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the

[non-moving party] from bringing a timely action in another forum." *Long v. Wilson*,

393 F.3d 390, 400 (3d Cir. 2004). "Incidental prejudice is insufficient grounds on which

to deny leave to amend." *Nelson*, 2016 WL 3267286, at *3 (citing *In re Caterpillar, Inc.*,

67 F. Supp. 3d 663, 668 (D.N.J. 2014)).

A plaintiff seeking leave to amend its complaint after the deadline in a scheduling

order must also show "good cause" for the request. Fed. R. Civ. P. 16(b)(4) ("Rule 16").

Good cause exists where the amendment is based on new facts. *ICU Med., Inc. v. RyMed

Techs., Inc.,* 674 F. Supp. 2d 574, 578 (D. Del. 2009). The touchstone of "good cause" is

diligence. Courts find good cause where the party seeking to amend "worked diligently

to obtain and confirm facts to support" the proposed amendment. *Cornell Univ. v.

Illumina, Inc.*, 2016 WL 3046258, at *5 (D. Del. May 27, 2016). Rule 16 "does not

require a party to exercise an advanced or superior level of diligence, but rather requires

only reasonable diligence." *Sabatino v. Union Twp.*, 2013 WL 1622306, at *5 (D.N.J.

Apr. 15, 2013).

The Trust's proposed amendments satisfy the requirements of both Rules 15 and 16: there is good cause to permit the Trust to seek to amend its Complaint, and there is ample basis for each amendment.

## I.   THE COURT SHOULD GRANT LEAVE TO AMEND THE TRUST'S COMPLAINT TO SEEK PUNITIVE DAMAGES IN CONNECTION WITH ITS PUFTA CLAIM

### A.    Good Cause Exists For The Trust To Seek Punitive Damages

The Trust has pursued discovery in this case with extraordinary diligence.  The Trust commenced discovery and sought to obtain Defendants' documents as soon as permitted after filing its Complaint.  Moridani Decl. ¶¶ 2-3.  Defendants, however, held back *all* of the documents which they produced in this case until *after* the deadline for amendments in the Scheduling Order had passed.  *Compare* Scheduling Order, D.I. 284 at 1-2 (Aug. 15, 2016) (setting September 30, 2016 deadline) *with* Moridani Decl. ¶ 4 (Defendants made their first productions of documents on November 11, 2016).  There was thus no possible way for the Trust to amend its Complaint based on evidence revealed in discovery prior to the expiration of the deadline in the Scheduling Order.

Since November 11, 2016, when Defendants made their first productions, *more than four million documents* have been produced in this case.  Moridani Decl. ¶ 5.  Most of these documents were produced by third parties, including Physiotherapy, and Defendants.  *Id.*  The Trust worked diligently to obtain this evidence, serving 50 RFPs on each Water Street Defendant, 49 RFPs on each Wind Point Defendant, and more than 50 third-party document subpoenas in total.  *Id.* ¶ 6.[1]

The evidence revealed in discovery thus far includes documents that clearly support the addition of a prayer for punitive damages under state law.  The Trust's

---

[1]   More evidence continues to be produced by Defendants pursuant to the Court's May 17, 2017 Order on the Trust's motion to compel. *Id.* ¶ 7.

original complaint focused on the knowledge and conduct of Physiotherapy—the only entity whose intent must be shown to establish an actual fraudulent transfer. *See, e.g.*, *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 300 (D. Del. 2012) (the "relevant intent is that of the debtor").    The complaint also included a handful of allegations regarding Defendants' conduct and state of mind, *see, e.g.*, Compl. ¶¶ 77-80, but those allegations were necessarily limited to the facts known at the time.    Based on that limited information, the Trust concluded in its original complaint only that Defendants were "aware of, *or were at best willfully blind to*, the Debtor's revenue overstatement" and that they "knew *or should have known*" that the LBO would render the Company insolvent.  *Id.* ¶¶ 77, 98 (emphasis added).

Based on evidence that has since come to light, the Trust can now allege that Defendants did not simply turn a blind eye to Physiotherapy's accounting misstatements, but actually knew about and actively tried to conceal the fraud.  By January 2009, Defendants feared that the Company was on a road to failure—Richard Kracum, a Wind Point co-founder, had concluded by then that "████████████████," and voiced that conclusion to other executives at Water Street and Wind Point.  Moridani Decl. ¶ 8, Ex. 1 at 1.  ████████████████████████████████████████████████ ████████████████████" *Id.* Defendants thus ████████████████████ ████████████████████████████████████████████████" in anticipation of a sale.  *Id.* at 2.  Dan Connors was hired as Physiotherapy's CEO the following month.  *Id.* ¶ 9, Ex. 2.  A few months after that, Physiotherapy submitted to Water Street a "First 180 Day Plan Agenda" in which the Company resolved to "reverse the decline in revenue" by altering, among other things, its collection and accounting practices.  Compl. ¶ 37.  The accounting manipulations detailed in the Trust's original Complaint followed.

7

Defendants noted in their Motion to Dismiss Brief that "Water Street engaged E&Y to prepare an independent, third party analysis of the quality of PTA's earnings," culminating in a "78-page Financial Due Diligence Report," titled "Project Power," that was "provided to Court Square and other potential bidders." Motion to Dismiss Br. at 19. But Defendants did not mention that an earlier version of E&Y's report concluded that Physiotherapy had ███████████████████████, *see* Moridani Decl. ¶ 12, Ex. 5— information that was never disclosed to either the Company's purchaser, Court Square Capital Partners, L.P. ("Court Square"), or the Noteholders. In that report, dated August 24, 2011 and titled "███████████," E&Y concluded that ████████████ ██████████████████████████████████████████████ ███████. *Id.* at 15.

On August 26, 2011—two days after E&Y issued this report—Mr. Kracum (of Wind Point) sent an email to his colleague Joseph Lawler and Water Street co-founder Jim Connelly stating: "████████████████████████?" Mr. Lawler responded: "███████████████████ ████████████." Since ████████████████████ Mr. Kracum asked: "████ ████████████████████████████████████ ████████████████████" Moridani Decl. ¶ 13, Ex. 6 (emphasis added).

Two months later, in October 2011, Defendants offered the Company for sale via a Confidential Information Memorandum that reported adjusted EBITDA for 2010 of *$59.1 million*. In other words, instead of correcting the Company's historical financial statements for 2010 to reflect E&Y's ████████████████ ████████, Defendants *increased* EBITDA by *another* ████████, to $59.1

8

million, to further inflate the value of the Company for the purpose of selling it. *Id.* ¶ 14, Ex. 7 at 6, 11. The $59.1 million EBITDA that Defendants reported for 2010 reflected a $23 million increase in EBITDA compared to 2009—an increase of 64% in just one year. *Id.* ¶ 10, Ex. 3 at 16 (2009 EBITDA was $36.1 million). Defendants claimed this astonishing improvement had occurred even though they knew that Physiotherapy was actually a "▮▮▮▮▮▮▮▮▮▮▮▮," as a Water Street partner noted in 2011. Moridani Decl. ¶ 11, Ex. 4 at 2.

Once the sale process commenced, the Company received indications of interest from 22 potential buyers. Ultimately, only a few bidders were interested—and two of those bidders, New Mountain Capital ("NM") and Clayton Dubilier & Rice, LLC ("CDR"), dropped out after their advisors began to suspect possible accounting irregularities. *See* Compl. ¶¶ 74-76.

A document which Defendants just produced in unredacted form shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In this email, dated January 25, 2012, Water Street's managing partner, Tim Dugan, expresses his "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," and then asks, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* ¶ 15, Ex. 8 (emphasis added). Dugan thus acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dugan then laments that the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* In response, a Water Street executive who sat on Physiotherapy's Board, Robert Womsley,

reassured Mr. Dugan that he had "████████████████████████████████████

████████████████████████████████████████████████████████████████"—

but agreed that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████. *Id.*

The "████████████████████████████████████████████████████████████

████████████████████." *Id.*

The assessment made by Defendants' agents at Jefferies was similar. On January

25, 2012, Defendants' advisors at E&Y informed Jefferies that ████████████████

████████████████████████████████████████████████████████████████

████████████████████████. *Id.* ¶ 16, Ex. 9. ████████████████████

████, the conclusion reached by senior Jefferies personnel was unambiguous: "████████

████████████████████████████████████████████████████████████████

████████████████" *Id.* (emphasis added).

Although Defendants knew that Physiotherapy's financial statements and

projections were not accurate, they did not have them corrected. Nor did they disclose

their knowledge of the misstatements in connection with the sale. Instead, they did the

opposite: Defendants took it upon themselves to make the deal happen ***despite*** the

inaccuracies.

By January 28, 2012, it was clear that Court Square was Defendants' "████████

████████████████████" Moridani Decl. ¶ 17, Ex. 10 at 1. Accordingly, Water Street

conceived of a plan to trick Court Square into completing the purchase, even though

Court Square was usually "████████████████████████████." *Id.* As Dugan explained it,

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

10

███████████████████████████████████████████████████

███████████████████ *Id.* at 2. ██████████████████

Dugan explained. ██████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████ " *Id.* (emphasis added).  The only

risk, on the other hand, was discovery that " ████████ " *Id.*  Water Street conveyed this

strategy to Jefferies' managing director, Richard Agabs, who proceeded to execute it—

and who then reported back to Water Street that ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ *Id.*

at 1.

Defendants and their agents at Jefferies also coached Physiotherapy's

management on how to conceal the fraud, and scripted management's conversations with

Court Square.  As reported by Mr. Womsley on February 14, 2012, ████████████

███████████████████████████████████████████████████

██████ *Id.* ¶ 18, Ex. 11 (emphasis added).  In response, Mr. Kracum ████████████

███████████████████████████████████████████████████

████████████████████ *Id.*

On February 19, 2012, just before the deal papers were to be signed, E&Y

reminded Defendants that, " ███████████████████ ," the Company's " ██

███████████████████████████████████████████ " *Id.* ¶ 19, Ex.

12 at 1.  Three days later, on February 22, 2012, the parties executed the Merger

Agreement, valuing the Company at $510 million based on its inflated financials.

11

Shortly before the agreement was signed, an executive at CDR—the bidder that withdrew its bid after identifying financial anomalies—apparently "█████████ ████████████████. *Id.* ¶ 20, Ex. 13. ████████████████████ █████████████████████████████████." *Id.* One of Jefferies' managing directors recognized that █████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████." *Id.* (emphasis added). And Water Street, discussing the same event, expressed a similar sentiment: "███████████████████████ ███████████████████████████████████████████████████ ████████████████████████████" *Id.* ¶ 21, Ex. 14.

The efforts to mislead continued in selling the Notes. On March 29, 2012, Physiotherapy's management ████████████████████████. *Id.* ¶ 22, Ex. 15. A current Jefferies managing director jumped into action: "████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████" *Id.* (emphasis added). A few weeks later, on April 18, 2012, the Company formally issued an Offering Memorandum seeking to borrow the funds necessary to consummate the sale. *Id.* ¶ 10, Ex. 3. That Offering Memorandum massively overstated the Company's financial performance, falsely reporting that Adjusted EBITDA was $57.4 million for 2011 when in fact it was at most $34 million. Compl. ¶ 84.

The sale closed, and the fraud was consummated, on April 30, 2012. Compl. ¶ 88. According to their own internal documents, Defendants "████████ ██████████" of this fraudulent transaction. *Id.*, ¶ 23, Ex. 16 at 1.

12

These facts, coupled with the facts showing fraud set forth in the Trust's original complaint, strongly suggest that punitive damages are appropriate in this case. The Trust's diligent pursuit of discovery has thus revealed evidence that supports additional relief. Because the Trust "worked diligently to obtain and confirm facts to support" its proposed amendment at all times, the requisite "good cause" for amendment exists. *Cornell Univ.*, 2016 WL 3046258, at *5; *see, e.g.*, *ICU Med.*, 674 F. Supp. 2d at 578 (good cause existed where moving party pursued discovery that revealed basis for amendment).

### B.     Justice Requires That The Trust Be Allowed To Seek Punitive Damages

The Trust's request for leave to seek punitive damages also satisfies the liberal standard for amendment under Rule 15. *First*, the Trust's request is not the product of undue delay, bad faith, or dilatory motives. The Trust's Motion comes before a single deposition has been taken or noticed and nine months before the February 15, 2018 discovery cut-off. *See* Amended Scheduling Order, D.I. 386 at 2. Courts routinely grant leave to amend to seek punitive damages in cases much further along than this one. *See, e.g.*, *Butz v. Lawns Unlimited Ltd.*, 568 F. Supp. 2d 468, 478-79 (D. Del. 2008) (granting leave to seek punitive damages almost ten months after close of discovery); *Trask v. Olin Corp.*, 2016 WL 1255302, at *10-11 (W.D. Pa. Mar. 31, 2016) (granting leave to seek punitive damages even though fact discovery was complete and expert discovery was almost complete).

*Second*, the amendment will not be futile. The Third Circuit has held that punitive damages are available in fraudulent transfer cases brought under the PUFTA. *See Klein v. Weidner*, 729 F.3d 280, 288 (3d Cir. 2013) (the "Pennsylvania Supreme Court would conclude that punitive damages are available under the PUFTA"); *see also*

13

*Lomas v. Kravitz*, 130 A.3d 107, 130 (Pa. Super. 2015) (affirming punitive damages award in case involving fraudulent transfer under PUFTA). Punitive damages are available under Pennsylvania law for "outrageous conduct," which means "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) [the defendant] acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 124 (2005); *see also Stemrich v. Zabiyaka*, 2013 WL 3340960, at *4-5 (M.D. Pa. July 2, 2013) (granting leave to amend to seek punitive damages under Pennsylvania law) (citing *Hutchison*). The Trust can now allege that Defendants had a "subjective appreciation of the risk of harm" to which they were exposing the Company's purchaser and creditors, and acted in "conscious disregard" of that risk. *See* Proposed Am. Compl. ¶¶ 101-104; *see also Luellen v. Luellen*, 2013 WL 1182958, at *2 (W.D. Pa. 2013) (wanton disregard for the rights of others justifies punitive damages); *Cty. of Lackawanna v. Verrastro*, 2009 WL 3825873, at *49 (Ct. Comm. Pl. June 24, 2009) (allegations of fraud support punitive damages).

*Finally*, permitting the Trust to seek punitive damages will not cause any undue prejudice. It will not require Defendants to expend significant, if any, additional resources on discovery, as the request for relief arises out of facts already in Defendants' possession and about which Defendants are already aware. It also "revolves around the same set of facts as in the original complaint and should not, therefore, significantly expand the scope of Defendants' preparation." *Zygmuntowicz v. Hosp. Invs., Inc.*, 151 F.R.D. 53, 55 (E.D. Pa. 1993) (granting leave to add prayer for punitive damages). Nor will the amendment cause any delay—Defendants will have ample time to prepare any defenses before trial, which is not yet scheduled and which will not occur for at least

14

another year.  *See* Amended Scheduling Order, D.I. 386 at 3.  There is no undue prejudice in these circumstances.

## II.    THE COURT SHOULD GRANT LEAVE TO AMEND THE COMPLAINT TO ADD DEFENDANTS' GENERAL PARTNERS AS DEFENDANTS

### A.    Good Cause Exists To Join The Proposed Additional Defendants

There is also good cause for the Trust's request to add Defendants' managing general partners, Water Street Healthcare Partners, LLC and Wind Point Advisors, LLC, as defendants.  Since filing this action, the Trust has diligently attempted to investigate Defendants' financial condition to verify that they possess sufficient assets to satisfy a judgment.  For example, in its First Set of RFPs, the Trust requested "[d]ocuments sufficient to identify the value of [Water Street's and Wind Point's] assets as of the date hereof, whether tangible or intangible, current or long term, including, but not limited to, cash, securities, investments, and accounts receivable."  Moridani Decl. ¶ 24; *see also id.* ¶ 25 (Trust's Interrogatory. Nos. 3-5 sought similar information).  But after initially stating that they would consider providing responsive information, Defendants ultimately refused to do so.  *Id.* ¶ 26.  The Trust asked Defendants to reconsider prior to filing this motion, but Defendants reiterated their refusal to provide information regarding their financial condition.  *Id.* ¶ 27.

Separately, the Trust has discovered that Water Street, which had sufficient assets in the fund at issue to satisfy a judgment when the Trust's original complaint was filed, has been liquidating the assets from that fund and distributing the cash to its limited partners during the pendency of this lawsuit.  After this lawsuit was filed, the Trust considered seeking a preliminary injunction against Water Street to prevent it from liquidating and distributing its assets until this case had been adjudicated, but Water Street protested, assuring the Trust it had more than sufficient assets to satisfy a judgment

in this case. Within a few months of that reassurance, Water Street quietly and quickly encumbered one of its two remaining assets with $340 million in new debt, some of which it presumably distributed to its limited partners. *Id.* ¶ 28, Ex. 17. Shortly thereafter, it sold part of another portfolio company for $460 million (*id.* ¶ 29, Ex. 18) and appears to have distributed the cash to its limited partners—without any advance notice to the Trust, despite earlier assurances to the contrary. And Wind Point, the Trust has learned, distributed virtually all of its assets to its limited partners shortly after the fraudulent LBO transaction at issue in this case closed.[2]

Taken together, these developments suggest that Defendants' ability to satisfy a judgment in its entirety is questionable in this case. Good cause therefore exists to permit the Trust to add additional, related parties as defendants, to help mitigate the credit risk of the Defendants to which the Trust is exposed. The two proposed new defendants have a very close relationship with the existing Defendants: they are the ultimate general partners or managers of each fund, they are the investment advisors that managed and oversaw the existing Defendants, and they had overlapping management. *Id.* ¶¶ 31-34, Exs. 19-20, 21 at 4, and 22 at 4. These entities are already represented in this case by the existing Defendants' outside law firms in connection with their responses to discovery as third-party witnesses. *Id.* ¶ 35. The newly-discovered evidence implicating Wind Point and Water Street in the fraud points to executives of the ultimate general partners (including Jim Connelly and Tim Dugan of Water Street and Rich Kracum of Wind Point). And these proposed defendants have significant revenue streams: they manage other Wind Point and Water Street funds with billions of dollars in assets, and they

---

[2]    In addition, Defendants recently informed the Trust in interrogatory responses that they will not invoke their contractual rights to seek the return of funds which they distributed to their investors *even if* the Trust obtains a judgment in this action. *Id.* ¶ 30.

generate substantial ongoing fees and deferred equity in the form of carried interest from those other funds.

Although the Trust could simply bring a separate action against these entities, *see, e.g.*, Del. Code Ann. tit. 6, § 15-307(b) (a plaintiff can bring claims "against the partnership and . . . any or all of the partners in the same action *or* in separate actions") (emphasis added), it would increase the burdens on both the Court and parties to require such a multiplicity of proceedings.  Good cause therefore exists to grant the Trust leave to bring its claims in a single proceeding.[3]

### B.    Justice Requires That The Trust Be Permitted To Add The Existing Defendants' Ultimate General Partners As Defendants

The Trust's request for leave to add the Defendants' general partners also satisfies the liberal Rule 15 standard.  *First*, there is no basis for finding undue delay or improper motive.  As discussed, the Trust seeks to join these entities based on developments during the discovery and investigation process that have magnified the Trust's concerns about Defendants' ability to satisfy a judgment.  The proposed additional defendants have additional assets that should be available to satisfy a judgment in this case.

*Second*, adding the Wind Point and Water Street general partners as defendants would not be futile.  Under Delaware law,[4] general partners are *automatically* liable for their limited partnerships' debts.  *See* Del. Code Ann. tit. 6, § 15-306 ("all partners are liable jointly and severally for all obligations of the partnership"), § 17-403 ("a general partner of a limited partnership has the liabilities of a partner in a partnership that is governed by the Delaware Uniform Partnership Law."); *New England Interconnect Sys.,*

---

[3]  The Trust is not seeking any provisional equitable relief at this time.  But the Trust has also added clarifying language to its prayer for relief in the amended complaint given the possibility that it may need to do so at some point in this case to prevent the further dissipation of assets.  *See* Motion, Ex. A.

[4]  Delaware law applies because the partnership Defendants here are all limited partnerships formed under Delaware law.  Moridani Decl. ¶ 36-40, Exs. 23-27.

17

*Inc. v. AEES, Inc.*, 2011 WL 2118853, at *3 (W.D. Pa. May 27, 2011) (granting leave to add general partner as defendant because, under Delaware law, "all partners are liable jointly and severally for all obligations of the partnership"); *Sandvik AB v. Advent Int'l Corp.,* 83 F. Supp. 2d 442, 448 (D. Del. 1999), *aff'd*, 220 F.3d 99 (3d Cir. 2000) ("In Delaware limited partnerships, a general partner is liable for the debts of the limited partnership.").

As illustrated in the diagram below, the two proposed additional defendants here are the ultimate general partners of the existing partnership Defendants. This diagram lists existing Defendants in blue and the new proposed defendants in green:



Thus, because Water Street Healthcare Partners, LLC and Wind Point Advisors, LLC are the ultimate general partners of the existing Water Street and Wind Point partnership Defendants, they are automatically liable for their debts.[5] And for all the

---

[5] As shown in the diagram in text, proposed defendant Water Street Healthcare Partners, LLC is the general partner of existing Defendant Water Street Healthcare Management, L.P., and is therefore liable for its debts; and Defendant Water Street Healthcare Management, L.P. is in turn the general partner of existing Defendant Water Street Healthcare Partners, L.P., and is therefore liable for its debts. *See* Moridani Decl. ¶¶ 31, 33; Exs. 19 and 21 at 1. Similarly, proposed defendant Wind Point Advisors, LLC is the general partner of existing Defendant Wind Point Investors IV, L.P., and is liable for its debts; and Defendant Wind Point Investors IV, L.P. is the general partner of Defendants

18

reasons that the Trust's claims against the *existing* Defendants are not futile, its claims against the proposed additional defendants will not be futile either.

*Third*, joinder of the additional defendants will not cause any undue prejudice. The Trust is not seeking to add any new claims; it merely seeks to join affiliated entities that are responsible for Defendants' liabilities. *See Angel v. Tokyo Hibachi Cuisine, Inc.*, 2015 WL 2364769, at *2 (D.N.J. May 14, 2015) (no prejudice where "the proposed amendment [to add new defendants] would add no new claims against the current defendants"). Joining these entities now would in fact ***decrease*** the burdens on the parties and the Court by eliminating the need for the Trust to file a separate suit against them. *See State Bd. of Admin. of Florida v. Cendant Corp.*, 2003 WL 26555890, at *2 (D.N.J. Aug. 19, 2003) ("[W]here the amendment is sought solely to add new parties to the litigation, the Court fails to see whom it would prejudice to hear the new parties now rather than later."). There will be no need for substantial additional discovery since the key fact to be established is simply that the proposed additional defendants are Defendants' general partners—which is plain from the face of the relevant formation documents—and there also will be no reason to delay the trial given the close relationship between the existing Defendants and those to be added, and the early stage of this case. *See, e.g.*, *Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 1987 WL 7189, at *2 (D. Del. Feb. 5, 1987) (adding new defendants "will not unduly complicate this litigation" given "the close relationship among the [parties]" where "[t]he factual basis for the claims against all the companies are the same").

---

Wind Point Partners IV, L.P. and Wind Point IV Executive Advisor Partners, L.P., and is liable for their debts. *Id.* ¶¶ 32, 34; Exs. 20 and 22 at 1. The Trust notes that its original complaint included Water Street Healthcare Partners, LLC as a defendant based on its role as a subsequent transferee. That entity was dismissed without prejudice (subject to a tolling agreement), along with the other subsequent transferee defendants, shortly after the complaint was filed.

Finally, although the Trust could wait to pursue its claims against these entities until it has obtained a judgment in this case, it will be much more efficient to do it now, in a single proceeding.  Federal Rule of Civil Procedure 20 confirms that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Joinder of a party's general partner is appropriate under Rule 20 where the general partner is responsible for the limited partner's liabilities.  *See, e.g.*, *New England Interconnect Sys.*, 2011 WL 2118853, at *3.

## CONCLUSION

For the foregoing reasons, the Trust respectfully requests leave to file its Proposed Amended Complaint, attached to the Trust's Motion as Exhibit A.


Dated: May 24, 2017

> QUINN EMANUEL URQUHART
> & SULLIVAN, LLP
> Richard I. Werder, Jr.
> Susheel Kirpalani
> Benjamin Finestone
> 51 Madison Avenue, 22nd Floor
> New York, New York 10010
>
> QUINN EMANUEL URQUHART
> & SULLIVAN, LLP
> R. Brian Timmons
> Johanna Y. Ong
> B. Dylan Proctor
> 865 South Figueroa Street, 10th Floor
> Los Angeles, California 90017
>
> -and-

20

PACHULSKI STANG ZIEHL & JONES LLP


_____/s/ Michael R. Seidl_____
Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:  ljones@pszjlaw.com
          mseidl@pszjlaw.com

**_Counsel for the PAH Litigation Trust_**

21