## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PHYSIOTHERAPY HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11 Case<br>Case No. 13-12965 (KG)<br>(Jointly Administered) |
| PAH LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>WATER STREET HEALTHCARE PARTNERS,<br>L.P., WS ASSOCIATE CO-INVEST PARTNERS,<br>LLC, WATER STREET HEALTHCARE<br>MANAGEMENT, L.P., WIND POINT<br>PARTNERS IV, L.P., WIND POINT IV<br>EXECUTIVE ADVISOR PARTNERS, L.P.,<br>WIND POINT ASSOCIATES IV, LLC, WIND<br>POINT INVESTORS IV, L.P., *et al.*,<br><br>Defendants. | Adversary Proceeding<br>No. 15-51238 (KG) |

## REPLY BRIEF IN SUPPORT OF THE PAH LITIGATION TRUST'S
## MOTION FOR LEAVE TO AMEND ITS COMPLAINT

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................1

ARGUMENT........................................................................................3

I.    THE TRUST SHOULD BE PERMITTED TO AMEND ITS
      COMPLAINT TO SEEK PUNITIVE DAMAGES...............................3

      A.    Pennsylvania Law Governs The Trust's Constructive Fraudulent
            Transfer Claim ..................................................................3

            1.    Defendants Cannot Contest The Pennsylvania-Law Basis
                  For The Trust's Pennsylvania UFTA Claim On This
                  Motion...................................................................4

            2.    Pennsylvania Law Applies Under Conflict Of Law
                  Principles................................................................6

      B.    Punitive Damages Are Available Under Pennsylvania Law ...........9

II.   JUSTICE REQUIRES THAT THE TRUST BE PERMITTED TO ADD
      DEFENDANTS' GENERAL PARTNERS AS DEFENDANTS....................12

      A.    It Will Not Be Futile To Add The General Partners As Defendants .........12

            1.    The Trust's Claims Are Not Futile Because The General
                  Partners Supposedly Lack Substantial Assets................................12

            2.    The Trust's Tolling Agreement With WSHP Is No
                  Impediment To Amendment ...........................................13

            3.    The Statute of Limitations Has Not Run With Respect to
                  Wind Point Advisors...................................................14

      B.    There Is Good Cause For Amendment ....................................15

CONCLUSION...............................................................................17

## TABLE OF AUTHORITIES

**Page**

### CASES

*Am. Imaging of Jersey City, Inc. v. Baldonado,*
2013 WL 3762638 (N.J. Super. Ct. App. Div. July 19, 2013)...............................15

*Am. Star Energy & Minerals Corp. v. Stowers,*
457 S.W.3d 427 (Tex. 2015), *reh'd denied* (May 1, 2015) ..................................15

*Baldonado v. Avrinmeritor, Inc.,*
2014 WL 2116112 (D. Del. May 20, 2014), *report and recommendation
adopted,* 2014 WL 2621119 (D. Del. June 10, 2014).............................................3

*Blumenthal v. Blumenthal,*
35 A.2d 831 (Del. Ch. 1944)...................................................................................8

*Computer Sciences Corp. v. SCI-TEK, Inc.,*
367 A.2d 658 (Del. Super. 1976)...........................................................................11

*Del. Health Corp. v. Grim,*
2014 WL 6666570 (Del. Super. Ct. Nov. 19, 2014)..............................................11

*Gillenardo v. Connor Broad. Delaware Co.,*
2002 WL 991110 (Del. Super. Ct. Apr. 30, 2002).................................................12

*Harris v. Steadman,*
160 F. Supp. 3d 814 (E.D. Pa. 2016) ....................................................................13

*Hutchison ex rel. Hutchinson v. Luddy,*
582 Pa. 114 (2005) .............................................................................................9, 10

*In re Am. Bus. Fin. Servs., Inc.,*
384 B.R. 80 (Bankr. D. Del. 2008) .........................................................................5

*In re FAH Liquidating Corp.,*
2017 WL 2559892 (Bank. D. Del. June 13, 2017) .................................................7

*In re Friedlander Capital Mgmt. Corp.,*
411 B.R. 434 (Bankr. S.D. Fla. 2009)..................................................................6, 8

*In re Opus East, L.L.C.,*
480 B.R. 561 (Bankr. D. Del. 2012) .......................................................................5

*In re SemCrude, L.P.,*
407 B.R. 112 (Bankr. D. Del. 2009) .......................................................................6

*In re Student Fin. Corp.,*
335 B.R. 539 (Bankr. D. Del. 2005) ......................................................................11

*In re The Heritage Org., L.L.C.,*
413 B.R. 438 (Bankr. N.D. Tex. 2009)...................................................................6

*In re W.R. Grace & Co.,*
    281 B.R. 852 (Bankr. D. Del. 2002) .................................................................. 6, 9

*Kingsbury v. Westlake Mgmt. Co.,*
    674 Fed. Appx. 792 (10th Cir. Dec. 30, 2016) ............................................. 14, 15

*Klein v. Weidner,*
    729 F.3d 280 (3d Cir. 2013) ..................................................................... 10, 11, 12

*Leyse v. Bank of Am. Nat'l Ass'n,*
    804 F.3d 316 (3d Cir. 2015) .......................................................................... 5

*Moretti v. The Hertz Corp.,*
    2016 WL 1238712 (D. Del. Mar. 29, 2016) ............................................... 5

*Morris v. Askeland Enters. Inc.,*
    17 P.3d 830 (Col. Ct. App. 2000) ................................................................. 11

*O'Hare v. Mezzacappa,*
    2015 WL 3555349 (E.D. Pa. June 8, 2015) ................................................. 11

*Oliver v. Roquet,*
    2014 WL 4271628 (D.N.J. Aug. 28, 2014) ................................................. 5

*Stephenson v. Capano Development,*
    462 A.2d 1069 (Del. 1983) .......................................................................... 11

*Travelers Indem. Co. v. Dammann & Co.,*
    594 F.3d 238 (3d Cir. 2010) .................................................................... 5, 12

*Travelers Indem. Co. v. Lake,*
    594 A.2d 38 (Del. 1991) .......................................................................... 6

*TrustCo Bank v. Mathews,*
    2015 WL 295373 (Del. Ch. Jan. 22, 2015) .............................................. 7, 9

*Wallach v. Eaton Corp.,*
    837 F.3d 356 (3d Cir. 2016) ....................................................................... 5

## STATUTES

12 Pa. C.S.A. § 5107 ..................................................................................... 11

6 Del. C. § 15-307 ......................................................................................... 15

6 Del. C. § 1307 ............................................................................................. 11

Fed. R. Civ. P. 12 ...................................................................................... 4, 5

## PRELIMINARY STATEMENT

Defendants' Opposition is most remarkable for what it does not do. It does not dispute that the Defendants' misconduct, as alleged in the proposed amended complaint, in fact occurred. It does not dispute that this alleged misconduct was sufficiently outrageous to support a prayer for punitive damages at the pleading stage. It does not dispute that good cause exists for the Trust's proposed amendment in light of the Trust's recent discovery of evidence revealing the nature and scope of Defendants' misconduct. Defendants never deny that the proposed additional defendants—their general partners— are automatically liable for Defendants' liabilities under basic principles of partnership law. The Opposition does not claim that allowing the Trust's proposed amendments now, before depositions have commenced, would cause any prejudice. And Defendants do not contend that the Trust's proposed amendments are the product of bad faith or any improper motive. Defendants thus concede the principal factors to be considered in resolving this motion.

The only arguments advanced by the Opposition are incorrect claims that (i) Delaware law somehow governs the Trust's claim brought under the Pennsylvania UFTA, and does not permit punitive damages; and (ii) the Trust's claims against Defendants' general partners should have been filed earlier, and are futile. Neither argument has any merit.

The complaint in this case asserts a constructive fraudulent transfer claim under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), not Delaware law. Pennsylvania is where the Debtor was headquartered, it is where the underlying activities relevant to the case took place, and it is where the fraudulent transfers occurred. The Trust's complaint asserting its PUFTA claim has been on file for almost two years now. The Court sustained this PUFTA claim after the Defendants sought to dismiss it. At no

time did the Defendants assert that the Trust's PUFTA claim is not governed by Pennsylvania law. And at no time did they contend that this Pennsylvania law claim can be converted by judicial fiat into a claim under the Delaware Uniform Fraudulent Transfer Act ("DUFTA"). That would have been an odd argument if asserted back then and it is even more oddly asserted today, long after the motion dismiss was adjudicated. The suggestion that the Trust's PUFTA claim should really be a DUFTA claim is in essence a new motion to dismiss that should have been made at the outset of the case, not two years later. In any event, Pennsylvania law applies under conflicts of law principles. And under controlling Third Circuit authority, punitive damages are available under the Pennsylvania UFTA.

Defendants also argue that an amendment to add their general partners as defendants should have been made sooner. But the Trust had no reason to do so because



*See* D.I. 524 ¶ 11. The need for the proposed amendment to add additional defendants thus arose only recently. And this amendment certainly is not futile, for Defendants never dispute that their general partners are liable for their debts under principles of partnership law; the tolling agreement that Water Street cites only applies to certain fraudulent transfer claims and not the partnership-law claims here; and the authorities make crystal clear that the statute of limitations for this secondary-liability claim only begins to run once the underlying fraudulent transfer claim against the partnerships has been reduced to a judgment, which has not yet occurred.

Thus, Defendants have conceded the most pertinent issues on this motion, and the arguments they do make are misguided. The Trust respectfully requests that the Court grant its motion for leave to amend.

## ARGUMENT

### I. THE TRUST SHOULD BE PERMITTED TO AMEND ITS COMPLAINT TO SEEK PUNITIVE DAMAGES

Defendants do not dispute, and thus concede,[1] that good cause exists for the Trust to amend its complaint to seek punitive damages. Nor do they dispute that the Trust's allegations describe outrageous conduct that is sufficient to support a prayer for punitive damages at the pleading stage. Defendants nevertheless argue that the proposed amendments are futile because (i) Delaware not Pennsylvania law applies to the Trust's constructive fraudulent transfer claim; (ii) punitive damages are not available for fraudulent transfers under Delaware law; and (iii) punitive damages are not available for constructive fraudulent transfers under Pennsylvania law either. Opp. at 6-11. These arguments are incorrect.

#### A. Pennsylvania Law Governs The Trust's Constructive Fraudulent Transfer Claim

Pennsylvania law governs the availability of punitive damages under the Trust's PUFTA claim, for two independent reasons: first, the Trust pled its claim under Pennsylvania law and defendants are not entitled to challenge the statutory basis for the Trust's claim here; and second, a correct conflicts of law analysis points to Pennsylvania law in any event.

---

[1] *See Baldonado v. Avrinmeritor, Inc.*, 2014 WL 2116112, at *7 n.6 (D. Del. May 20, 2014), *report and recommendation adopted*, 2014 WL 2621119 (D. Del. June 10, 2014) (arguments not addressed in response brief are deemed conceded).

3

### 1. Defendants Cannot Contest The Pennsylvania-Law Basis For The Trust's Pennsylvania UFTA Claim On This Motion

The Trust filed its constructive fraudulent transfer claim under Pennsylvania's UFTA. Compl., D.I. 1 ¶¶ 156-165 (Count VII). Defendants nevertheless argue that the Trust's proposed request for punitive damages is futile because "Delaware law, not Pennsylvania law, governs Plaintiff's state law constructive fraudulent transfer claim." Opp. at 7. But Defendants have no right to contest the statutory basis for the Trust's claim at this stage of the case. Defendants have already moved to dismiss the Trust's PUFTA claim once, arguing that it failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because it was preempted by the "safe harbor" in Section 546(e) and based on principles of ratification.[2] The Court rejected those arguments and sustained the Trust's PUFTA claim.[3] Defendants could have sought dismissal on the additional ground that Pennsylvania law supposedly does not apply, but they chose not to do so—and they admit that choice was deliberate.[4]

Defendants cannot now bring another motion to dismiss raising their choice of law argument, for "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g). This "'consolidation rule' is intended to eliminate unnecessary delay at the pleading stage by encouraging the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense simultaneously rather than interposing these defenses and

---

[2] *See* Opening Br. in Support of Water Street and Wind Point Entities' Mot. to Dismiss the Complaint, D.I. 107 at 12-13 (filed Nov. 18, 2015).

[3] *See* Order, D.I. 251 (entered June 20, 2016).

[4] *See* Opp. at 7 n.5 (noting that defendants included a footnote, in their first motion to dismiss from 2015, stating that they did not concede that Pennsylvania law applied). Simply not conceding, without offering any attempt to refute the claim, is a deliberate decision not to challenge it.

objections in piecemeal fashion." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015).[5]  A defendant thus cannot raise arguments in a motion to dismiss an amended complaint that could have been raised in response to an earlier complaint. *See In re Am. Bus. Fin. Servs., Inc.*, 384 B.R. 80, 86 (Bankr. D. Del. 2008) (rejecting arguments in motion to dismiss amended complaint that "should have been raised in the initial motion to dismiss" original complaint); *Oliver v. Roquet*, 2014 WL 4271628, at *3 (D.N.J. Aug. 28, 2014) ("[E]ven if a plaintiff files an amended complaint . . . [it] does not revive the right to interpose defenses or objections which might have made to the original complaint.") (quotation omitted).[6]

Thus, at this stage of the case, defendants can only raise *new* arguments presented by *new* allegations in the Trust's proposed amended complaint, not *preexisting* arguments presented by the Trust's *preexisting* claims and allegations. *In re Am. Bus. Fin. Servs., Inc.*, 384 B.R. at 86. Defendants' assertion that Delaware law governs the Trust's constructive fraudulent transfer claim could have been brought in response to the Trust's original complaint, in Defendants' motion to dismiss. Defendants cannot assert their Delaware law position now, nearly two years later, in arguing futility or seeking to dismiss the Trust's proposed amended complaint. *See Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

---

[5] *See also Wallach v. Eaton Corp.*, 837 F.3d 356, 363 n.9 (3d Cir. 2016) (similar); *Moretti v. The Hertz Corp.*, 2016 WL 1238712, at *3 (D. Del. Mar. 29, 2016) (Rule 12(g) "requires a party who raises a defense by motion prior to an answer [to] raise all such possible defenses in a single motion") (quotation omitted).

[6] Although some older decisions did not strictly apply Rule 12(g), *see In re Opus East, L.L.C.*, 480 B.R. 561 (Bankr. D. Del. 2012), the Third Circuit recently reminded district courts that they "should enforce Rule 12(g)(2)" and rejected the permissive approach taken in those cases. *See Leyse*, 804 F.3d at 322 n.5.

## 2.    Pennsylvania Law Applies Under Conflict Of Law Principles

Pennsylvania law also applies under a conflicts of law analysis. "In the absence of a specific federal policy or interest dictating the use of federal choice of law rules, . . . a bankruptcy court faced with the issue of which substantive state law to apply to a claim for relief in an adversary proceeding applies the choice of law rules of the forum state." *In re SemCrude, L.P.*, 407 B.R. 112, 133 (Bankr. D. Del. 2009). Delaware applies the "most significant relationship" test for resolving conflicts of law. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). Defendants agree that the "most significant relationship" test applies, Opp. at 7, but misapply that test.

In considering what state has the most significant relationship to a fraudulent transfer claim, courts primarily consider the principal places of business of the relevant entities, the residence of the relevant employees and decision-makers, and the location where the decision-making that resulted in the fraudulent transfer occurred. *See In re W.R. Grace & Co.*, 281 B.R. 852, 855 (Bankr. D. Del. 2002) (New Jersey law applied because that was defendant's principal place of business); *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 463 (Bankr. N.D. Tex. 2009) (Texas law applied because Texas was the location of debtor and defendants' principal place of business; a Texas resident controlled the entity defendants; and the "relevant decision-making" for the fraudulent transfer occurred in Texas). Courts also grant deference to the plaintiff's choice of law as pled in the complaint. *See In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434, 440 (Bankr. S.D. Fla. 2009) (Connecticut law applied because "the Trustee seeks to avoid a fraudulent transfer under Connecticut law"). The parties' states of incorporation may also be considered, but that factor carries less weight, particularly in a fraudulent transfer case. *See In re W.R. Grace & Co.*, 281 B.R. at 855 ("The state of incorporation may be an important contact where the issue is internal corporate governance, but that is not the

situation [in a fraudulent transfer claim]."); *TrustCo Bank v. Mathews*, 2015 WL 295373, at *10 (Del. Ch. Jan. 22, 2015) (a company's "principal place of business" is "generally . . . considered more important" than the place of incorporation).

Applying these factors, Pennsylvania clearly has the most significant relationship to the Trust's constructive fraud claim. *First,* the headquarters and principal place of business of the primary Debtor, Physiotherapy Associates Holdings, Inc., was located in Pennsylvania. *See* D. I. 510-1, Moridani Decl. ¶ 10 & Ex. 3 at 9. The principal places of business of the other Debtors were also in Pennsylvania. Supplemental Declaration of Farbod Moridani ("Supp. Moridani Decl."), Ex. 5 at 1 n.1. The entity that issued the Notes pursuant to the fraudulent Offering Memorandum, called Physiotherapy Merger Sub, Inc., merged into the Debtor such that the surviving entity following the transaction continued to be headquartered in Pennsylvania. Moridani Decl. ¶ 10 & Ex. 3 at 1. None of the relevant parties had primary places of business in Delaware.[7]

*Second,* nearly all of the relevant events in this case occurred in Pennsylvania. The Debtor earned more net revenue and had more clinics in Pennsylvania than in any other state in the country. *See id.* ¶ 10 & Ex. 3 at 2, 10. ███████████████

███████████████████████████████████████████████

█████████ *See* Supp. Moridani Decl. ¶¶ 2-3 & Exs. 1-2. ████████

███████████████████████████████████████████████

█████████ *Id.* The accounting records underlying the financial disclosures in the

---

[7] Courts also consider the principal places of business of the litigants, but that factor is inapposite here because the Trust has no principal place of business and the Defendants are based in Illinois (and neither party contends that Illinois law governs). Defendants' reliance (at 8) on *In re FAH Liquidating Corp.*, 2017 WL 2559892 (Bank. D. Del. June 13, 2017) is therefore misplaced. The Court held in that case that the principal place of business of one party is equally important to the principal place of business of another party. *Id.* at *10. But here, the only entity whose principal place of business is material is the Debtor, which was based in Pennsylvania.

Offering Memorandum were all housed in Pennsylvania.  Moridani Decl. ¶ 10 & Ex. 3 at

134. 

Supp. Moridani Decl. ¶¶ 4-5 & Exs. 3-4.   No other state has nearly as close a relationship to the

subject matter of the Trust's claims as Pennsylvania.  By contrast, none or virtually none

of the relevant events and decisions underlying the Trust's claims took place in Delaware.

*Finally,* the Trust filed its claim under Pennsylvania law, and that choice of law is

entitled to deference.  *In re Friedlander Capital Mgmt. Corp.*, 411 B.R. at 442.

Defendants overlook all of these facts and point instead to facts that have little or

no relevance.  *First,* Defendants note (Opp. at 7) that Delaware law governs the Merger

Agreement *between Defendants and the purchaser*.  But the Merger Agreement has no

bearing here, for neither the Trust nor the creditors in whose name the Trust's PUFTA

claim is brought (*see* Compl. ¶ 11) were parties to the Merger Agreement.  Just as the

Trust cannot be bound by a pre-petition release which it did not sign, *see* D.I. 250 at 30

(the Court holding that "because the Trustee was not a party to the Release, he is not

bound by the terms of the agreement"), the Trust and creditors are not bound by a choice

of law clause to which they never agreed either.

*Second,* Defendants note (Opp. at 7) that Delaware was the situs of the *stock* they

redeemed in exchange for the fraudulent transfers, but they cite no authority suggesting

that the location of their stock is relevant to a choice of analysis.[8]  It is not: the Trust's

claims are based on the *funds* that were transferred, not the *stock* that Defendants

---

[8] *Blumenthal v. Blumenthal*, 35 A.2d 831 (Del. Ch. 1944), the only authority on which
Defendants rely (Opp. at 7), did not involve a conflict of law analysis at all.  The court's
discussion of the situs of Delaware stock pertained to unrelated questions of jurisdiction.
*Id.* at 833.

redeemed. And the fraudulently-transferred funds were transferred from an entity, the Debtor, which was based in Pennsylvania, not Delaware.[9]

*Finally*, Defendants note (Opp. at 7-8) that the parties to the Merger Agreement and certain affiliates of the Debtor were incorporated in Delaware, but, as shown above, the state of incorporation is given little weight in the context of a fraudulent transfer claim. *See In re W.R. Grace & Co.*, 281 B.R. at 855; *TrustCo Bank v. Mathews*, 2015 WL 295373, at *10.

This case is centered around a party that was based in Pennsylvania and ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████, and the improperly-transferred funds belonged to a company that was based in Pennsylvania. Defendants do not identify any relevant events that actually occurred in Delaware. Pennsylvania thus has the most significant relationship to the Trust's UFTA claim.

### B.    Punitive Damages Are Available Under Pennsylvania Law

Defendants concede that punitive damages are available under the PUFTA but argue, without citation to authority, that they are not available here because "intentional conduct" is not an element of the Trust's constructive fraudulent transfer claim under the PUFTA. Opp. at 10. Controlling authorities dispense with this argument.

*First,* in *Hutchison ex rel. Hutchinson v. Luddy*, 582 Pa. 114, 124 (2005), the Pennsylvania Supreme Court explained that the availability of punitive damages under Pennsylvania law turns on the *conduct* that is proven, *not* the elements of the claim. The appellate court in that case reversed an award of punitive damages on the grounds that the

---

[9] Defendants assert (Opp. at 8) that there is no evidence the funds physically "traveled through Pennsylvania," but defendants do not suggest that the funds traveled through Delaware either.

claim for which punitive damages were awarded, alleging negligence, "may succeed upon a showing of ordinary negligence, and an award of punitive damages requires far more than ordinary negligence[.]" *Id.* The Supreme Court reversed that decision, holding that such reasoning "conflate[s] theories of liability with the distinct issue of damages[.]" *Id.* The Court explained:

> The fact that a cause of action bottomed on negligence does not require proof of the heightened showing of culpability necessary to sustain punitive damages in order to secure the underlying compensatory damages does not mean that punitive damages—as an element of damages—should be deemed automatically unavailable, even if the conduct of the defendant(s) went well beyond negligence and into the realm of the outrageous. The penal and deterrent purpose served by an award of punitive damages is furthered when the outrageous conduct occurs in a case sounding in negligence no less than when an intentional tort is at issue.

*Id.* There is nothing "in law or logic to prevent the plaintiff in a case sounding in negligence from undertaking the additional burden of attempting to prove, as a matter of damages, that the defendant's conduct not only was negligent but that the conduct was also outrageous, and warrants a response in the form of punitive damages." *Id.* at 125.

Under controlling Pennsylvania Supreme Court authority, it is thus a defendant's *conduct* that determines a plaintiff's entitlement to punitive damages, not the elements of the claim the plaintiff has asserted. And nowhere do Defendants dispute that their conduct, as alleged by the Trust based on evidence produced in discovery, was sufficiently reprehensible to warrant a claim for punitive damages.

*Second,* the Third Circuit's decision in *Klein v. Weidner,* 729 F.3d 280, 290-91 (3d Cir. 2013), also undermines Defendants' position. The Third Circuit predicted in *Klein* that "the Pennsylvania Supreme Court would conclude that punitive damages are available under the PUFTA . . . based on the actual language of the statute itself—especially the 'catch-all' provision in Section 5107(a)(3)(iii)." That "catch-all" section

enumerates the remedies available under the PUFTA for both actual and constructive

fraudulent transfer. *See* 12 Pa. C.S.A. § 5107(a)(iii) ("In an action for relief against a

transfer or obligation *under this chapter*, a creditor . . . may obtain: . . . (iii) any other

relief the circumstances may require.") (emphasis added). *Klein* thus holds that punitive

damages are available under the section of the PUFTA that enumerates the remedies for

*both* actual *and* constructive fraudulent transfer. This binding authority[10] thus refutes

Defendants' claim that punitive damages are available under the PUFTA only when an

actual fraudulent transfer claim is pled.

Accordingly, because Pennsylvania law applies and allows for punitive damages,

the Trust's request for leave to add a prayer for punitive damages should be granted.[11]

---

[10] *See In re Student Fin. Corp.*, 335 B.R. 539, 548 (Bankr. D. Del. 2005) (Third Circuit's "interpretation of Pennsylvania law is binding on this Court in the absence of subsequent state statute or binding state court decision to the contrary."); *O'Hare v. Mezzacappa*, 2015 WL 3555349, at *2 (E.D. Pa. June 8, 2015) (recognizing that, under *Klein,* punitive damages are available under PUFTA).

[11] Although the Court need not reach this issue because Pennsylvania law applies, the Third Circuit's reasoning in *Klein* indicates that punitive damages are available under the DUFTA as well. That statute authorizes "any other relief the circumstances may require" to remedy a fraudulent transfer, 6 Del. C. § 1307(a)(3)(c), which is the same "catch-all" language that *Klein* held supports punitive damages. 729 F.3d at 290-91. Nearly every court that has considered comparable language in their state's UFTA agrees that it permits punitive damages. *See id.* at 294-96. Colorado applies a different rule, but that is only because fraudulent transfer claims in Colorado are considered to be "*purely* equitable, and punitive damages are unavailable in equitable actions." *Morris v. Askeland Enters. Inc.*, 17 P.3d 830, 832-33 (Col. Ct. App. 2000) (emphasis added). Delaware, by contrast, does *not* view fraudulent transfer claims as purely equitable: Delaware's Superior Court—a court of law—hears fraudulent transfer claims, *see, e.g., Del. Health Corp. v. Grim*, 2014 WL 6666570, at *3 (Del. Super. Ct. Nov. 19, 2014) ("Plaintiff seeks to avoid alleged fraudulent transfers . . . which is an appropriate cause [of] action to be heard in Superior Court"), and has authority to fashion broad *legal* remedies for fraudulent transfers, *see Computer Sciences Corp. v. SCI-TEK, Inc.*, 367 A.2d 658, 661 (Del. Super. 1976) (courts may, in fraudulent transfer cases, levy "attachment [which] is a proceeding at law and a court of law is competent to adjudicate issues of fraud"). Defendants' assumption (Opp. at 9) that fraudulent transfer claims in Delaware are purely equitable in nature is thus incorrect. And there is no dispute that Delaware permits punitive damages in actions at law for fraud, *Stephenson v. Capano Development*, 462 A.2d 1069, 1076-77 (Del. 1983), and even for non-fraud claims where "it appears that the defendant has committed a willful wrong, in the nature of deceit,"

## II.    JUSTICE REQUIRES THAT THE TRUST BE PERMITTED TO ADD DEFENDANTS' GENERAL PARTNERS AS DEFENDANTS

The Court should also grant the Trust's request for leave to add Water Street Healthcare Partners, LLC ("WSHP") and Wind Point Advisors, LLC ("WPA," and with WSHP, the "General Partners") as defendants. Defendants claim these amendments are futile and there is no good cause to allow them, but neither assertion is correct.

### A.    It Will Not Be Futile To Add The General Partners As Defendants

#### 1.    The Trust's Claims Are Not Futile Because The General Partners Supposedly Lack Substantial Assets

Defendants first appear to argue (Opp. at 11-12) that the Trust's amendment is futile because the General Partners supposedly do not possess significant assets. But the financial wherewithal of the proposed additional defendants is irrelevant to futility. The relevant question is whether the Trust has a proper basis to *assert* liability against the General Partners, not whether it will ultimately be able to *recover* from those entities. *See Travelers,* 594 F.3d at 243 (an amendment is futile only if the amended complaint would be subject to dismissal).

Defendants fail to address this relevant question at all. As the Trust's Opening Brief explained at length (at 15-20), the Trust seeks leave to add the General Partners as defendants *in their capacities as the general partners* of the existing partnership Defendants. As a matter of partnership law, the General Partners are *automatically* liable for the debts of the existing limited partnership defendants. *Id.* at 17 (citing authorities). Defendants offer no response. They do not deny that WSHP and WPA are in fact the general partners of the existing partnership Defendants. And they do not dispute that

---

*Gillenardo v. Connor Broad. Delaware Co.,* 2002 WL 991110, at *11 (Del. Super. Ct. Apr. 30, 2002) (quotations omitted). Thus, although the courts of Delaware have not yet addressed these issues, the Delaware Supreme Court would likely find punitive damages to be available under the DUFTA as well. *See Klein,* 729 F.3d at 295-96.

these entities are responsible for the debts of the existing Defendants as a matter of law. Defendants thus fail to meet their burden in asserting futility. *See Harris v. Steadman*, 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016) ("given the liberal standard for the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile") (quotation omitted).

In any case, the Trust contends that these entities do in fact have recoverable assets. Defendants' unsupported assertions to the contrary at most raise a factual dispute that cannot be resolved at the pleading stage.

### 2.    The Trust's Tolling Agreement With WSHP Is No Impediment To Amendment

Defendants next argue that the Trust's request for leave to amend violates a tolling agreement between the Trust and WSHP.[12]  It does not.

As the Trust noted in its Opening Brief (at 18 n.5), the Trust named WSHP as a defendant in its original complaint *solely* in its capacity as a subsequent transferee of a portion of the fraudulently transferred funds. *See* Compl. ¶ 19.  After filing suit, the Trust entered into tolling agreements with WSHP and dozens of other subsequent transferee defendants.



The tolling agreement with WSHP provides

---

[12]  Defendants assert this argument only as to WSHP and not WPA.

*See* D.I. 524-06,  Ex. 6 ¶¶ 1-2. █████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████, and the terms of the

tolling agreement thus have no application here.[13]

In any event, should the Court determine that the tolling agreement must be

terminated before WSHP can be added as a defendant, ████████████████████

████████████████████████████████████████████████████████████

████████████████████████[14]    The tolling agreement certainly is not an

impediment to amendment.

### 3.    The Statute of Limitations Has Not Run With Respect to Wind Point Advisors

Defendants also misapprehend the nature of the Trust's claims against the General

Partners in arguing (Opp. at 13) that the statute of limitations has run on the Trust's

proposed claims against WPA.   The limitations periods that Defendants cite are for

fraudulent transfer claims.   But the Trust seeks to add WSHP and WPA as defendants

under partnership law, not as recipients of fraudulent transfers.

A claim asserted against a general partner seeking to recover on underlying

partnership liabilities is in the nature of debt collection, and is governed by the statute of

limitations applicable to a suit for debt.   *See Kingsbury v. Westlake Mgmt. Co.*, 674 Fed.

Appx. 792, 796 (10th Cir. Dec. 30, 2016) (claims seeking to impose liability on a partner

---

[13]    Notably, because the Trust is not seeking leave to sue WSHP in its capacity as subsequent transferee, the Trust has not invoked the provisions of the Scheduling Order which allow it to renew claims against dismissed subsequent transferees.   *See* Am. Scheduling Order, D.I. 386 ¶ 1 ("Joinder of other Parties and Amendment of Pleadings. All motions to join other parties (*other than subsequent transferees* and parties to claims for indemnification and/or contribution), or to amend or supplement the pleadings, shall be filed on or before September 30, 2016.") (emphasis added).

[14] ████████████████████████████████████████████████████████████

██████████████████  D.I. 524-06, Ex. 6 ¶ 6.

for partnership liabilities are subject to the limitations period governing a suit for debt). That limitations period on such a claim does not even *begin* to run until the underlying debt is reduced to a judgment. *See id.*; *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430-34 (Tex. 2015), *reh'd denied* (May 1, 2015) (same); *Am. Imaging of Jersey City, Inc. v. Baldonado*, 2013 WL 3762638, at *6 (N.J. Super. Ct. App. Div. July 19, 2013) ("Baldonado's argument that plaintiffs' claims are barred by the statute of limitations lacks sufficient merit to warrant discussion in a written opinion. . . . [T]he cause of action to impose liability upon him personally [in his capacity as general partner] did not accrue until there was a final judgment against the partnership in 2010.").

Defendants' statute of limitations argument is erroneous.[15]

## B.      There Is Good Cause For Amendment

Defendants last argue (Opp. at 12) that there is no "good cause" for the Trust's request to add the General Partners as defendants because the Trust knew of the General Partners' "existence" (Opp. at 2) before the deadline for amendment in the Scheduling Order. But the Trust did not learn until recently that ███████████████████ ████████████████████████████████████████ ███████████████████████████████. Good cause exists to permit the addition of new, related parties in light of that recently-discovered evidence.

At the time this case was filed, ████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

---

[15] As shown in the Trust's Opening Brief (at 17), although the statute of limitations has not yet begun to run, the Trust nevertheless may assert partnership liability now because "[a]n action may be brought against the partnership and . . . any or all of the partners *in the same action or in separate actions.*" 6 Del. C. § 15-307(b) (emphasis added).



To require the Trust to bring its partnership liability claims against the General Partners in a separate action, as it is entitled to do, would serve only to increase the burdens on the Court and parties. Good cause exists to allow amendment in this case.

Finally, Defendants suggest (Opp. at 11) that adding the General Partners will not decrease "the risk Plaintiff theoretically may face" in collecting a judgment because these entities supposedly do not have "any significant assets." But Defendants provide no evidentiary support for this assertion, and their own publicly filed documents contradict it. Supp. Moridani Decl. ¶ 7 & Ex. 6 at 3 (WSHP Brochure from Form ADV, dated March 31, 2017, stating "the General Partners receive a Management Fee . . . and a carried interest in connection with advisory services."); *id.* Ex. 7 at 3 (similar, as to WPA). At most this raises a factual dispute not appropriate for resolution here. This certainly is not a basis for precluding the Trust's proposed amendment.

## CONCLUSION

For the foregoing reasons, the Trust respectfully requests that its Motion for Leave to Amend its Complaint be granted.


Dated: June 30, 2017

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Richard I. Werder, Jr.
Susheel Kirpalani
Benjamin Finestone
51 Madison Avenue, 22nd Floor
New York, New York 10010

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
R. Brian Timmons
Johanna Y. Ong
B. Dylan Proctor
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

-and-

PACHULSKI STANG ZIEHL & JONES
LLP


        /s/ Peter J. Keane
Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
Peter J. Keane (Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
        mseidl@pszjlaw.com
        pkeane@pszjlaw.com


*Counsel for the PAH Litigation Trust*