**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PHYSIOTHERAPY HOLDINGS, INC., *et al.*,<br><br>             Debtors. | Chapter 11 Case<br>Case No. 13-12965 (KG)<br>(Jointly Administered) |
| PAH LITIGATION TRUST,<br><br>           Plaintiff,<br><br>  v.<br><br>WATER STREET HEALTHCARE PARTNERS,<br>L.P., WS ASSOCIATE CO-INVEST PARTNERS,<br>LLC, WATER STREET HEALTHCARE<br>MANAGEMENT, L.P., WIND POINT PARTNERS<br>IV, L.P., WIND POINT IV EXECUTIVE ADVISOR<br>PARTNERS, L.P., WIND POINT ASSOCIATES IV,<br>LLC, WIND POINT INVESTORS IV, L.P., *et al.*,<br><br>           Defendants. | Adversary Proceeding<br>No. 15-51238 (KG) |

**SUPPLEMENTAL DECLARATION OF FARBOD MORIDANI**

I, Farbod Moridani, make this declaration and state:

  1.  I am an associate at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for plaintiff the PAH Litigation Trust (the "Trust"). I am admitted *pro hac vice* in the above-captioned action (the "Action"). I respectfully submit this supplemental declaration in support of the Trust's Motion for Leave to Amend its Complaint (the "Motion"). I make this declaration of personal, firsthand knowledge, and, if called and sworn as a witness, I could and would testify competently thereto.

  2.  Attached hereto as Exhibit 1 is a true and correct copy of a document produced by Physiotherapy in this Action, bearing Bates number PHYSIO_000165825, consisting of an email

from Dan Connors to Maryellen Presutti dated January 10, 2011 and the attachment thereto, an offer letter to Andrew DeVoe. Mr. Connors' office is listed as Exton, Pennyslvania in his signature. Mr. Devoe's "work location," according to his offer letter, is going to be Exton, Pennsylvania.

3.      Attached hereto as Exhibit 2 is a true and correct copy of a document produced by Physiotherapy in this Action bearing Bates number PHYSIO_001167233, consisting of an email from Angela McClure to Chris Sarkesian and Sandy Sloyer dated February 1, 2012 and an excerpt from the attachment thereto listing the employees of Physiotherapy and their work locations. Officers such as Mr. Connors, Mr. Devoe, Edwin Bode, and Michael Walden are listed as working in Pennsylvania.

4.      Attached hereto as Exhibit 3 is a true and correct copy of a document produced by Physiotherapy in this Action bearing Bates number PHYSIO_000202687, consisting of an email between Michael Powell and Jim Connelly, et al., dated February 1, 2012, and the attachment thereto. The agenda described in the email notes that the accounting and operation diligence meetings will be held in Exton, Pennsylvania.

5.      Attached hereto as Exhibit 4 is a true and correct copy of a document produced by Physiotherapy in this Action bearing Bates number PHYSIO_002712823, consisting of an email from Susan Hoeflich to Matt Remsen dated February 3, 2012. It references Court Square's visit to the Physiotherapy headquarters on the same day for diligence meetings.

6.      Attached hereto as Exhibit 5 is a true and correct copy of the Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan, entered in the Bankruptcy Proceeding, Dkt. No. 197 (Dec. 23, 2013).

7.      Attached hereto as Exhibit 6 is a true and correct copy of a brochure filed by Water Street Healthcare Partners LLC in connection with its Form ADV submission to the Securities and Exchange Commission dated March 31, 2017.

8.      Attached hereto as Exhibit 7 is a true and correct copy of a brochure filed by Wind Point Advisors LLC in connection with its Form ADV submission to the Securities and Exchange Commission dated March 29, 2016.

9.



10.     In February 2016, however, and without any notice to the Trust, Water Street sold the largest division of HPH—named HealthPlan Services, Inc.—for $460 million, but retained its ownership interest in the other division, named Zenith American Solutions, Inc. ("Zenith"). Attached hereto as Exhibit 8 is a true and correct copy of an article published in The Deal, titled "Wipro makes big bet with acquisition of Healthplan Services," dated February 11, 2016.

11.



12.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 30, 2017

_____
Farbod Moridani

# EXHIBIT 1
# FILED UNDER SEAL

# EXHIBIT 2
# FILED UNDER SEAL

# EXHIBIT 3
# FILED UNDER SEAL

# EXHIBIT 4
# FILED UNDER SEAL

# EXHIBIT 5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PHYSIOTHERAPY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 13-12965 (KG) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER APPROVING THE DEBTORS'
## DISCLOSURE STATEMENT FOR, AND CONFIRMING,
## THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN

The above-captioned debtors (collectively, the "Debtors") having:

a. distributed, on or about October 10, 2013, (i) the Joint Prepackaged Plan of Reorganization of Physiotherapy Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 18] (as modified, amended or

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Physiotherapy Holdings, Inc. (5193); Actra Rehabilitation Associates, Inc. (7806); Alexandria Sports, Inc. (7654); Benchmark Acquisition Corp. (3850); Benchmark Medical Management Company (0335); Benchmark O&P Holdings, Inc. (6848); Benchmark Orthotics & Prosthetics, Inc. (7000); Blue Hen Physical Therapy, Inc. (7267); Cape Prosthetics-Orthotics, Inc. (7914); Carrollton Physical Therapy Clinic, Inc. (2832); Integrity Physical Therapy, Inc. (1075); Keystone Rehabilitation Associates of Warren (8341); Keystone Rehabilitation Systems, Inc. (8380); Keystone Rehabilitation Systems of McMurray (6304); Leesburg Sports, Inc. (4190); MATRIX Healthcare Services, LLC (7344); MATRIX Rehabilitation, Inc. (3147); MATRIX Rehabilitation-Delaware, Inc. (2504); MATRIX Rehabilitation-Georgia, Inc. (4073); MATRIX Rehabilitation-Ohio, Inc. (2505); MATRIX Rehabilitation-South Carolina, Inc. (5603); MATRIX Rehabilitation-Texas, Inc. (9542); Morris Area Rehabilitation Association, Inc. (2043); North Dallas Physical Therapy Associates, Inc. (5331); Northstar Health Services, Inc. (7152); NSHS Services, Inc. (6789); Orthopaedic Services of Paducah, Inc. (3143); PhysioLink Corporation (3705); Physiotherapy Associates Holdings, Inc. (3367); Physiotherapy Associates, Inc. (7193); Physiotherapy Associates-Union Rehab, LLC (0041); Physiotherapy Corporation (3816); Physiotherapy-BMHI Holdings, Inc. (3361); Physiotherapy-BMI, Inc. (4107); Potomac Rehabilitation Services, Inc. (2725); Professional Rehab Associates, Inc. (2393); Progressive Therapy Services, Inc. (8449); Rehab Associates, L.L.C. (9381); Rehab Colorado, LLC (5804); Rehab Missouri, LLC (0587); Rehab Xcel, LLC (0586); Rehabilitation Consultants, Inc. (1166); R.S. Network, Inc. (9104); SMR Banyan Tree, Inc. (6933); Swanson Orthotic & Prosthetic Center, Inc. (2308); The Parks Physical Therapy and Work Hardening Center, Inc. (2926); Theraphysics Partners of Colorado, Inc. (2115); Theraphysics Partners of Texas, Inc. (9976); Therapy Associates of Martinsville, Inc. (1394); Trumbull P.T. Corp. (3855); Wisconsin Prosthetics and Orthotics, Inc. (7815). The Debtors' main corporate address is 855 Springdale Drive, Suite 200, Exton, PA 19341.

supplemented from time to time, the "Plan"),[2] (ii) the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Physiotherapy Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 19] (the "Disclosure Statement") and (iii) Ballots for voting on the Plan to holders of Claims and Interests entitled to vote on the Plan, including holders in Class 3 (Bridge Loan Credit Agreement Claims) and Class 4 (Senior Notes Claims), in accordance with the terms of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules");

b.    commenced, on November 12, 2013 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

c.    filed,[3] on the Petition Date, the Plan and the Disclosure Statement;

d.    filed, on the Petition Date, the *Debtors' Motion for Entry of an Order (A) Scheduling an Objection Deadline and Combined Hearing on Their Disclosure Statement and Plan Confirmation, (B) Approving Form and Notice of Confirmation Hearing, (C) Establishing Procedures for Objections to The Disclosure Statement and The Plan, (D) Approving Solicitation Procedures, (E) Waiving the Requirement for Meetings of Creditors or Equity Holders, and (F) Granting Related Relief* [Docket No. 12] (the "Joint Hearing Motion");

e.    filed, on the Petition Date, the *Declaration of Peter Walsh of Kurtzman Carson Consultants LLC Regarding the Mailing, Voting and Tabulation of Ballots Accepting and Rejecting the Joint Prepackaged Plan of Reorganization for Physiotherapy Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 20] (the "Voting Certification"), which details the results of the Plan voting process;

f.    filed, on the Petition Date, the *Notice of Filing of Amended Exhibit C and Exhibit G to Debtors' Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Physiotherapy Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 21];

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan (attached as **Exhibit A** hereto), the Disclosure Statement or the Bankruptcy Code, as applicable. The rules of construction set forth in Article I.B of the Plan shall apply.

[3]    Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in the Chapter 11 Cases, as applicable.

2

g.      filed, on the Petition Date, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on (A) Disclosure Statement and (B) Confirmation of the Plan of Reorganization and Related Matters, and Summary of the Plan of Reorganization*, which contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing"), and the deadline for filing objections to the Plan and the Disclosure Statement [Docket No. 12] (the "Confirmation Hearing Notice");

h.      filed, on November 21, 2013, the Affidavit/Declaration of Service *re: 1) Joint Prepackaged Plan of Reorganization of Physiotherapy Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code; 2) Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Physiotherapy Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code; and 3) Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on (A) Disclosure Statement and (B) Confirmation of the Plan of Reorganization and Related Matters, and Summary of the Plan of Reorganization* [Docket No. 64] (the "Confirmation Hearing Notice Affidavit");

i.      published, on November 18, 2013 in *The Philadelphia Enquirer*, as evidenced by the *Proof of Publication in The Philadelphia Enquirer* of Florence Devlin, and in *The Wall Street Journal*, as evidenced by the *Affidavit* of Jeff Aldridge, and on November 19, 2013, in the *New York Times (National Edition)*, as evidenced by the *Certification of Publication* of Alice Weber [Docket No. 88] (together with the Confirmation Hearing Notice Affidavit, the "Affidavits"), the Confirmation Hearing Notice, consistent with the order granting the Joint Hearing Motion [Docket No. 49] (the "Scheduling Order");

j.      filed, on December 12, 2013, the *Plan Supplement for the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 135];

k.      filed, on December 16, 2013, the *Debtors' (A) Memorandum of Law of Physiotherapy Holdings, Inc. and Its Debtor Affiliates in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan and (B) Reply to Objection to Confirmation of the Plan* (the "Confirmation Brief"), which includes the *Declaration of Martin McGahan in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* (the "McGahan Declaration") and the *Declaration of Dan Gilligan in Support of an Order Approving the Debtors' Disclosure Statement for and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* (the "Gilligan Declaration," and, together with the McGahan Declaration, the "Declarations"); and

3

l.      operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.      entered, on November 14, 2013, the Scheduling Order;

b.      set December 17, 2013, at 1:30 p.m. (prevailing Eastern Time), as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Certification, the Confirmation Hearing Notice, the Affidavits, the Ballots, and all filed pleadings, exhibits, statements and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements and reservations of rights;

d.      held the Confirmation Hearing;

e.      heard the statements, arguments [and objections] made by counsel in respect of approval of the Disclosure Statement and Confirmation;

f.      considered all oral representations, testimony, documents, filings and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan; and

g.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

4

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

**A.     Findings and Conclusions**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue and Core Proceeding**

2.      The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code.

**C.     Eligibility for Relief**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.     Commencement and Joint Administration of the Chapter 11 Cases**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order Authorizing Joint*

5

*Administration of Related Chapter 11 Cases* [Docket No. 38], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. No statutory committee of unsecured creditors or equity security holders has been appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Cases.

**E.     Judicial Notice, Objections**

5.     The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases. All unresolved objections, statements, informal objections and reservations of rights, if any, related to the Plan, the Disclosure Statement or Confirmation are overruled on the merits and with prejudice.

**F.     Burden of Proof—Confirmation of the Plan**

6.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**G.     Notice**

7.     As evidenced by the Affidavits, due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, has been provided to: (a) the Office of the United States Trustee for the District of Delaware;

6

(b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Bridge Loan Agent; (d) counsel to certain Bridge Loan Lenders; (e) counsel to the Senior Notes indenture trustee; (f) counsel to the ad hoc committee of senior noteholders; (g) counsel to the equity sponsor; (h) each of the holders of equity interests in the Debtors; (i) the Delaware Secretary of State; (j) the Delaware Secretary of Treasury; (k) the Delaware State Attorney General; (l) the Office of the United States Attorney General for the District of Delaware; (m) the National Association of Attorneys General; (n) the state attorney general for each of the states in which the Debtors operate; (o) the Internal Revenue Service; (p) the Securities and Exchange Commission; and (q) those persons who have formally appeared and requested service in these cases pursuant to Rule 2002 of the Federal Rule of Bankruptcy Procedure (the parties identified in clauses (a) through (j), collectively, the "Core Notice Parties"), all Holders of Claims and Interests, and the Potential Defendants and Witnesses. Also, the Confirmation Hearing Notice was published in *The Wall Street Journal*, *The New York Times* and *The Philadelphia Inquirer* in compliance with the Scheduling Order and Bankruptcy Rule 2002(*l*). Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020 and other applicable law and rules, and no other or further notice is or shall be required.

**H.    Disclosure Statement**

8.    The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules and regulations, including the Securities Act of 1933, as amended (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan and the transactions contemplated therein and (c) is approved in all respects.

7

**I.    Ballots**

9.    The Classes of Claims and Interests entitled under the Plan to vote to accept or reject the Plan (the "Voting Classes") are set forth below:

| Class | Designation |
|-------|-------------|
| Class 3 | Bridge Loan Credit Agreement Claims |
| Class 4 | Senior Notes Claims |

10.    The Ballots the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for holders in the Voting Classes to vote to accept or reject the Plan.

**J.    Solicitation**

11.    The solicitation of votes on the Plan complied with the solicitation procedures set forth in the Joint Hearing Motion and approved in the Scheduling Order (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable rules, laws, and regulations, including the Securities Act.

12.    Prior to the Petition Date, the Plan, the Disclosure Statement and the applicable Ballot (collectively, the "Solicitation Materials"), and, following the Petition Date, the Confirmation Hearing Notice, were transmitted and served, including to all holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order and any applicable nonbankruptcy law.    Transmission and service of the Solicitation Materials and the Confirmation Hearing Notice were timely, adequate and sufficient.    No further

8

notice is required.

13.   The Solicitation Materials were distributed to holders in the Voting Classes that held a Claim or an Interest, as applicable, as of September 27, 2013 (the date specified in such documents for the purpose of the solicitation) (the "Record Date").  The establishment and notice of the Record Date were reasonable and sufficient.

14.   The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for holders in the Voting Classes to make an informed decision to vote to accept or reject the Plan.

15.   Under section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims or Interests, as applicable, in the following Classes (the "Unimpaired Classes"), each of which is conclusively presumed to have accepted the Plan:

| Class | Designation |
|-------|-------------|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | Intercompany Claims |
| Class 8 | Non-Subordinated Contribution and Reimbursement Claims |
| Class 9 | Intercompany Interests |

16.   Also, the Debtors were not required to solicit votes from the holders of Claims in Class 7 (Subordinated Claims) and Class 10 (Interests other than Class 9 Interests), which were deemed to reject the Plan.

**K.   Voting**

17.   Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, and regulation.

9

L.    **Plan Supplement**

18.    The Plan Supplement includes the following documents:  (a) the New Corporate Governance Documents for Reorganized PAH; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Assumed Executory Contract and Unexpired Lease List; (d) a list of retained Causes of Action; (e) the Litigation Trust Agreement; (f) the Exit Facility Credit Agreement; (g) the members of the New Board of PAH, to the extent known; (h) the Description of Transaction Steps; and (i) the Management Employment Agreements.

19.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required.   All documents included in the Plan Supplement are integral to, part of and incorporated by reference into the Plan.  Subject to the terms of the Plan (including Article X.A of the Plan), the Debtors reserve the right to alter, amend, update or modify the Plan Supplement before the Effective Date.  The Debtors timely filed and served the Plan Supplement on the Core Notice Parties, providing them with due, adequate and sufficient notice of—and ample time to review—the Plan Supplement prior to the Confirmation Hearing.

M.    **Compliance with Bankruptcy Code Requirements—Section 1129(a)(1)**

20.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

(i)    **Proper Classification—Sections 1122 and 1123(a)(1)**

21.    The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Interests into ten Classes.  Valid business, factual and legal reasons exist for the separate

10

classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

### (ii)    Specified Unimpaired Classes—Section 1123(a)(2)

22.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the Unimpaired Classes (as defined above) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code. Additionally, Article II of the Plan specifies that Allowed Administrative Claims and Priority Tax Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

### (iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3)

23.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
|-------|-------------|
| Class 3 | Bridge Loan Credit Facility Claims |
| Class 4 | Senior Notes Claims |
| Class 7 | Subordinated Claims |
| Class 10 | Interests (other than Intercompany Interests) |

### (iv)    No Discrimination—Section 1123(a)(4)

24.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable

11

treatment of such Claim or Interest.

### (v)     Adequate Means for Plan Implementation—Section 1123(a)(5)

25.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code, Article IV, and various other provisions of the Plan specifically provide, in detail, adequate and proper means for the Plan's implementation.  The Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on or around the Effective Date pursuant to the terms of the Plan.

### (vi)     Voting Power of Equity Securities—Section 1123(a)(6)

26.     The amendments to the articles or certificates of incorporation for Reorganized PAH, filed as part of the Plan Supplement, and for the other Reorganized Debtors, to be filed on or promptly after the Effective Date, prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

### (vii)     Directors and Officers—Section 1123(a)(7)

27.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV.L of the Plan contains provisions regarding the manner of selection of the Reorganized Debtors' directors and officers that are consistent with the interests of all holders of Claims and Interests, and public policy.

### (viii)     Impairment / Unimpairment of Classes—Section 1123(b)(1)

28.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan impairs or leaves unimpaired each Class of Claims and Interests.

### (ix)     Assumption and Rejection—Section 1123(b)(2)

29.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides for the assumption, assumption and assignment, or rejection of the Debtors'

Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected during the Chapter 11 Cases under section 365 of the Bankruptcy Code.

      **(x)     Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action—Section 1123(b)(3)**

30.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests and controversies relating to the contractual, subordination and other legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The compromise and settlement of such Claims and Interests embodied in the Plan and reinstatement and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates and all holders of Claims and Interests, and are fair, equitable and reasonable.

31.     Article VIII.D of the Plan describes certain releases granted by the Debtors (the "Debtor Release").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Such release is a necessary and integral element of the Plan, and is fair, reasonable and in the best interests of the Debtors, the Estates and creditors.  Also, the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by Article VIII.D of the Plan; (3) given, and made, after due notice and opportunity for hearing; and (4) a bar to any of the Debtors asserting any Claim or Cause of Action released by Article VIII.D of the Plan.  Notwithstanding anything in the Plan, none of the Potential Defendants and

K&E 28549336.14

Witnesses is a Released Party or shall receive or be deemed to receive a release through the Debtor Release under the Plan or this Confirmation Order.

32.     In addition, the Debtor Release is appropriate because:  (a) there is an identity of interest between the Debtors and each of the Released Parties as (i) they share the common goal of confirming the Plan and implementing the transactions contemplated thereby and (ii) a suit against the Released Parties is, in essence, a suit against the Debtors or will deplete assets of the Estates; (b) each of the Released Parties provided a substantial contribution to the reorganization; (c) the Debtor Release is essential to the Plan to the extent that, without the Debtor Release, there is little likelihood that the Plan would succeed; (d) the Plan was overwhelmingly accepted by Holders of Claims in the Voting Classes; and (e) the Plan provides for payment in full (or otherwise unimpairs) substantially all of the other classes of Claims affected by the Debtor Release.

33.     Article VIII.E of the Plan describes certain releases granted by certain third parties (the "Third-Party Releases").  The Third-Party Releases provide finality for the Debtors, the Reorganized Debtors and the Released Parties regarding the parties' respective obligations under the Plan and are fully consensual releases.  The Confirmation Hearing Notice sent to holders of Claims and Interests and published in the *The Wall Street Journal, The New York Times* and *The Philadelphia Inquirer* and the Ballots sent to all holders of Claims entitled to vote on the Plan, in each case, and unambiguously stated that the Plan contains Third-Party Releases. Such releases are a necessary and integral element of the Plan, and are fair, equitable, reasonable and in the best interests of the Debtors, the Estates and all holders of Claims and Interests.  Also, the Third-Party Releases are:  (1) in exchange for the good and valuable consideration provided by the Debtors, the Reorganized Debtors, the Estates and the Released Parties; (2) a good-faith

14

settlement and compromise of the Claims released by Article VIII.E of the Plan; (3) given, and made, after due notice and opportunity for hearing; (4) consensual by holders of Claims and Interests granting the Third-Party Releases or otherwise not objected to by holders of Claims and Interests granting the Third-Party Releases, including the Unimpaired Classes; and (5) a bar to any Entity granting a release under Article VIII.E of the Plan from asserting any Claim or Cause of Action released by Article VIII.E of the Plan. Notwithstanding anything in the Plan, none of the Potential Defendants and Witnesses is a Released Party or shall receive or be deemed to receive a release through the Third Party Releases under the Plan or this Confirmation Order.

34. The exculpation, described in Article VIII.G of the Plan (the "Exculpation"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents and is appropriately limited in scope, as it will have no effect on the liability of any Entity for acts or omissions occurring after the Effective Date. Without limiting anything in the Exculpation, each Exculpated Party has participated in the Chapter 11 Cases in good faith and, to the fullest extent permitted by law, is appropriately released and exculpated from any Exculpated Claim or any obligation, Cause of Action or liability for any Exculpated Claim, including any claim related to any act or omission in connection with, relating to, or arising out of the Debtors' restructuring efforts, the Plan Support Agreement, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into, in connection with, or pursuant to the Plan Support Agreement, the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan. The Exculpation,

K&E 28549336.14

including its carve-out for fraud, gross negligence or willful misconduct, is entirely consistent with established practice in this jurisdiction and others. Notwithstanding anything in the Plan, none of the Potential Defendants and Witnesses is an Exculpated Party and shall not be released and exculpated from any Exculpated Clam and any obligation, Cause of Action or liability for any Exculpated Claim.

35.    The injunction provision set forth in Article VIII.H of the Plan is necessary to implement, preserve and enforce the Debtors' discharge, the Debtor Release, the Third-Party Releases and the Exculpation, and is narrowly tailored to achieve this purpose.

36.    Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the exculpation and unopposed releases set forth in Articles VIII.D, E, G and H of the Plan, respectively, because, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (1) were integral to the agreement among various parties in interest, as reflected in the Plan Support Agreement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (2) confer substantial benefits on the Debtors' estates, (3) are fair and reasonable and (4) are in the best interests of the Debtors, their Estates and other parties in interest.

37.    Article IV.U of the Plan appropriately provides that the Reorganized Debtors will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action (excluding the Contributed Claims of the Debtors that are transferred to the Litigation Trust), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action will be preserved notwithstanding the occurrence of the

K&E 28549336.14

Effective Date, all in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable and reasonable, and are in the best interests of the Debtors, the Estates and holders of Claims and Interests.

38.     The full release and discharge of all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates described in Article VIII.C of the Plan except (a) with respect to the Liens securing the Other Secured Claims (depending on the treatment of such Claims) or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan (the "Lien Release"), is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable and reasonable and are in the best interests of the Debtors, the Estates and holders of Claims and Interests.

### (xi)    The Litigation Trust

39.     Establishing and funding the Litigation Trust on the Effective Date is appropriate because it will effectively and efficiently enable the Litigation Trustees to pursue the Contributed Claims transferred and assigned to the Litigation Trust and distribute the proceeds recovered to Holders of the Senior Notes and the Consenting Shareholders. The claims and Causes of Action that are being contributed to the Litigation Trust include the Contributed Claims of the Consenting Shareholders, the Consenting Noteholders, and the Debtors and their Estates; provided, however, they do not include any actions specifically enumerated in **Exhibit D** to the Plan Supplement or Article IV.U of the Plan. All of the Debtors' obligations with respect to any Allowed Non-Subordinated Contribution and Reimbursement Claims shall be assumed by the Litigation Trust.

17

40.     The Contributed Claims that may be asserted against the Potential Defendants and Witnesses include all claims or Causes of Action arising under state and/or federal law, such as (but not limited to) claims arising under title 11 of the U.S. Code and applicable law, including without limitation sections 502(d), 510, 542 through 551, and 553 of title 11 and any similar state laws, violations of state and/or federal securities laws, breach of contract, breach of fiduciary duty (including aiding and abetting any such breach), and common law claims such as quantum meruit and unjust enrichment. **Exhibit G** of the Disclosure Statement (as amended, modified or supplemented from time to time) provides a non-exclusive list of (i) potential claims and Causes of Action, which are expressly identified and preserved by the Debtors for possible prosecution and assigned to the Litigation Trust by the Contributing Claimants and (ii) Persons and Entities against whom such potential claims and Causes of Action may be asserted.

(xii)    **Additional Plan Provisions—Section 1123(b)(6)**

41.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**N.      Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2)**

42.     The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

  a.  is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

  b.  has complied with applicable provisions of the Bankruptcy Code; and

  c.  complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order and all other

18

applicable law, in transmitting the Solicitation Materials, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.      Plan Proposed in Good Faith—Section 1129(a)(3)**

43.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the process leading to Confirmation, including the overwhelming support of holders of Claims and Interests for the Plan, and the restructuring transactions to be implemented pursuant thereto. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

**P.      Payment for Services or Costs and Expenses—Section 1129(a)(4)**

44.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**Q.      Directors, Officers and Insiders—Section 1129(a)(5)**

45.     The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. Article IV.L of the Plan, in conjunction with **Exhibit G** of the Plan Supplement, discloses the identity and affiliations of the individuals proposed to serve as the initial directors of the New PAH Board as well as any Person proposed to serve as an officer of any of the Reorganized Debtors, and the identity and nature of any compensation for any insider who will be employed or retained by the New PAH Board, the New Subsidiary Boards or the

19

Reorganized Debtors. The proposed directors and officers for the Reorganized Debtors are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of the holders of Claims and Interests and with public policy. In addition, **Exhibit E** of the Plan Supplement discloses the identity and nature of the compensation to be paid to the Litigation Trustees.

  **R.**  **No Rate Changes—Section 1129(a)(6)**

  46.  Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission and requires no governmental regulatory approval.

  **S.**  **Best Interest of Creditors—Section 1129(a)(7)**

  47.  The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered, or adduced, at, or prior to, or in the Declarations, in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in every Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

  **T.**  **Acceptance by Certain Classes—Section 1129(a)(8)**

  48.  The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code. Classes 1, 2, 5, 6, 8 and 9 constitute Unimpaired Classes—each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the

K&E 28549336.14

Bankruptcy Code—and the Voting Classes, Classes 3 and 4, have voted to accept the Plan. However, Classes 7 (Subordinated Claims) and 10 (Interests other than Class 9 Interests) are impaired under the Plan and are not entitled to receive any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

U.    **Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9)**

49.    The treatment of Administrative Claims, Fee Claims filed by Professionals and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

V.    **Acceptance By At Least One Impaired Class—Section 1129(a)(10)**

50.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. The Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims and Interests, as applicable, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

W.    **Feasibility—Section 1129(a)(11)**

51.    The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The financial projections attached to the Disclosure Statement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Declarations filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented or

21

proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

X.    **Payment of Fees—Section 1129(a)(12)**

52.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

Y.    **Continuation of Employee and Retiree Benefits—Section 1129(a)(13)**

53.    The Debtors do not provide any retiree benefit plans or programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

Z.    **Non-Applicability of Certain Sections—Sections 1129(a)(14), (15) and (16)**

54.    Sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

AA.    **"Cram Down" Requirements—Section 1129(b)**

55.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to Classes 7 and 10, the only Impaired Classes that have not accepted the Plan. Holders of Claims in Classes 7 and 10, if any, are deemed to have rejected the Plan. Nonetheless, no holder of any Claim or

K&E 28549336.14

Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim or Interest. Third, the Plan does not discriminate unfairly with respect to Classes 7 or 10 because the Claims placed in Class 7 are similar as are the Interests placed in Class 10. Accordingly, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan

      **BB.**    **Only One Plan—Section 1129(c)**

      56.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

      **CC.**    **Principal Purpose of the Plan—Section 1129(d)**

      57.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

      **DD.**    **Good Faith Solicitation—Section 1125(e)**

      58.    The Debtors, the Bridge Loan Lenders, the Bride Loan Agent, the holders of Senior Notes, the Senior Notes Indenture Trustee, the Consenting Shareholders and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys and advisors of each of the foregoing, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan, including the execution, delivery, and performance of the Plan Support Agreement, and the prepetition solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

23

**EE.    Satisfaction of Confirmation Requirements**

59.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**FF.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

60.    Each of the conditions precedent to the Effective Date, as set forth in Article IX of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX of the Plan.

**GG.    Implementation**

61.    All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements and are not in conflict with any federal or state law.

**HH.    Disclosure of Facts**

62.    The Debtors have disclosed all material facts regarding the Plan, including (a) the fact that each applicable Debtor will emerge from its Chapter 11 Case as a validly existing corporation, limited liability company, partnership or other form, as applicable, with separate assets, liabilities and obligations (other than Holdings, which is dissolving) and (b) the creation, funding, notice of creation and potential targets of the Litigation Trust.

**II.    Exit Financing**

63.    Upon diligent inquiry, the Debtors have determined that the Exit Facility to be provided by the Exit Facility Agent and certain Exit Lenders subject to and in accordance with the Exit Facility Credit Agreement and the agreement describing the Exit Facility attached to the Disclosure Statement (the "Exit Facility Commitment Letter"), statements made on the record, and such other changes as the parties thereto may agree are the best financing alternatives

24

available to the Reorganized Debtors.  The terms of the Exit Facility have been negotiated in good faith and on an arm's-length basis, and each party thereto may rely upon the provisions of the Confirmation Order in closing the Exit Facility.  The terms of the Exit Facility are consistent in all material respects with the terms set forth in the Exit Facility Commitment Letter.  The availability of borrowings under the Exit Facility is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The terms and conditions of the Exit Facility Credit Agreement are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtors' Estates and their creditors.  The execution, delivery or performance by the Debtors or Reorganized Debtors, as the case may be, of or in accordance with any documents in connection with the Exit Facility, and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or the Confirmation Order.  The financial accommodations to be extended pursuant to the Exit Facility Credit Agreement are being extended in good faith and for legitimate business purposes.

64.    The Debtors have provided sufficient and adequate notice of the terms of the Exit Facility Commitment Letter, the Exit Facility Credit Agreement and the credit arrangements set forth therein to all parties in interest, including, without limitation, (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Bridge Loan Agent; (d) counsel for certain lenders under the bridge loan credit agreement; (e) counsel to the Senior Notes indenture trustee; (f) counsel to the ad hoc committee of senior noteholders; (g) counsel to certain Bridge Loan Lenders; (i) the Delaware Secretary of

K&E 28549336.14

State; (j) the Delaware Secretary of Treasury; (k) the Delaware State Attorney General; (l) the Office of the United States Attorney General for the District of Delaware; (m) the National Association of Attorneys General; (n) the state attorney general for each of the states in which the Debtors operate; (o) the Internal Revenue Service; (p) the Securities and Exchange Commission; and (q) those persons who have formally appeared and requested service in these cases pursuant to Rule 2002 of the Federal Rule of Bankruptcy Procedure.

65.     On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility Credit Agreement shall be deemed approved and shall be legal, valid, binding, enforceable and perfected liens on and security interests in the collateral for the Exit Facilities and having the priorities set forth therein.

66.     The security interests and liens to be granted in accordance with the Exit Facility Credit Agreement (the "Exit Liens") are not be subject to recharacterization or equitable subordination for any purposes whatsoever and are not preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Confirmation Order. All fees, costs and expenses paid or to be paid by the Debtors and Reorganized Debtors in connection with the Exit Facility are hereby ratified and approved.

**JJ.     Settlement of Certain Claims and Interests**

67.     To consensually resolve all outstanding disputes among the Debtors, the Consenting Bridge Loan Lenders, the Consenting Noteholders and the Consenting Shareholders,

K&E 28549336.14

the Debtors, the Consenting Bridge Loan Lenders, the Consenting Noteholders and the Consenting Shareholders agreed to the settlement embodied in the Plan, including the creation of the Litigation Trust to pursue the Contributed Claims, which shall be effective as of the Effective Date. The settlement was extensively negotiated in good faith and is an integral component of the Debtors' overall restructuring and the transactions contemplated in the Plan. The settlement is in the best interests of the Debtors, their respective Estates and the holders of Claims and Interests and is fair, equitable and reasonable.

**KK.    Valuation**

68.    The valuation set forth in the Disclosure Statement was prepared by the Debtors' investment banker, Rothschild Inc., in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Debtors' businesses as a going concern.

**LL.    Retention of Jurisdiction**

69.    The Court may properly retain competent jurisdiction over the matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code. For the avoidance of doubt, the Court does not retain jurisdiction over any Causes of Action arising under state or other federal law (other than Causes of Action arising under the Bankruptcy Code) brought by the Litigation Trust in a state or other federal court of competent jurisdiction; provided, however, that nothing in the Plan or this Confirmation Order shall limit the jurisdiction of the Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, the Disclosure Statement or the Litigation Trust Agreement, without regard to whether the controversy with respect to which such interpretation

27

or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1.      **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

2.      **Notice of the Confirmation Hearing.**  Notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

3.      **Solicitation.**  The solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations, and was appropriate and satisfactory and is approved in all respects.

4.      **Ballots.**  The Ballots are in compliance with Bankruptcy Rule 3018(c), conform to Official Form B14, and are approved in all respects.

5.      **The Disclosure Statement.**  The Disclosure Statement is approved in all respects.

6.      **Confirmation of the Plan.**  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

7.      **Objections.**  All objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those withdrawn

K&E 28549336.14

with prejudice in their entirety on the merits and with prejudice prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety or are otherwise resolved as incorporated herein.

8.    **No Action Required.**  Pursuant to the appropriate provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act and other state laws, and section 1142(b) of the Bankruptcy Code, and otherwise, no action of the respective directors, stockholders, managers, or members of the Debtors or Reorganized Debtors, as applicable, shall be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including but not limited to any documentation executed in connection with the Exit Facility, the Exit Facility Credit Agreement, the Management Incentive Plan, the New Stockholders Agreement and the Litigation Trust Agreement.

9.    **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors and any and all holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

10.    **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan

K&E 28549336.14

Supplement, on the Effective Date, (i) all property in each Estate, all Causes of Action and any property acquired by any of the Debtors pursuant to the Plan, except for the assets contributed to the Litigation Trust, including any Contributed Claims of the Debtors and their Estates, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances, except for Liens securing the Exit Facility and (ii) all property of the Debtors and their Estates contributed to the Litigation Trust, including any Contributed Claims of the Debtors and their Estates, will be transferred to and vest in the Litigation Trust, free and clear of all Liens, claims, charges or other encumbrances.   On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any claims, Interests or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

11.    **Authorizations to Take Acts Necessary to Implement Plan.**   The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, file, or record such contracts, instruments, releases, leases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan without the need for any further notice to or action, order or approval of the Court, or other act or action under applicable law, regulation, order or rule except for those expressly required pursuant to the Plan, the Bridge Loan Credit Agreement, the Exit Facility Credit Agreement, the Litigation Trust Agreement, the New Stockholders Agreement or any document included in the Plan Supplement.  All matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors, managers or members of the Debtors or the Reorganized Debtors, as applicable, shall be deemed to have been so approved and shall be in effect prior to,

K&E 28549336.14

on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers, or members of the Debtors, or the need for any approvals, authorizations, actions or consents except as otherwise expressly required pursuant to the Plan, the Bridge Loan Credit Agreement, the Exit Facility Credit Agreement, the Litigation Trust Agreement, the New Stockholders Agreement or any document included in the Plan Supplement. Except as otherwise stated in the Plan, this Confirmation Order shall constitute all approvals and consents required (including consents to assume or assign Executory Contracts), if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement and any documents, instruments or agreements and any amendments or modifications thereto. On the Effective Date, or as soon as thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation or other constituent documents with the Secretary of State of Delaware, in accordance with the Delaware General Corporation Law or the Delaware Limited Liability Company Act.

12.     **Effectiveness of All Actions.** Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to the Confirmation Order, without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except those expressly required pursuant to the Plan.

13.     **Restructuring Transactions**. The Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including

31

(a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; (d) the execution and delivery of all documents in connection with the creation and funding of the Litigation Trust; and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

14.     Any transfers of assets effected through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.  Each Debtor (excluding Holdings), as reorganized, as applicable, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

15.     **Effectuating the Restructuring Transactions.**  The Restructuring Transactions shall be effectuated pursuant to the steps described in **Exhibit H** to the Plan Supplement. Specifically, after the Effective Date and on the final federal income tax return for the Debtors' consolidated tax group (the common parent of which is Holdings) for its tax year ending on the

K&E 28549336.14

Effective Date, Holdings will make an affirmative election under Section 1.1502-36(d)(6)(i)(A) of the Treasury Regulations to reduce its tax basis in its PAH Interests in an amount sufficient to avoid any reduction in the tax attributes of PAH and the other remaining Reorganized Debtors. For the avoidance of doubt, to the extent permitted under applicable law, any similar election shall be made on corresponding foreign, state and local income tax returns for such tax year.

16.    Pursuant to sections 1123 and 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other state, without further action by the Bankruptcy Court or the stockholders, members, managers or board of directors of any Debtor or Reorganized Debtor, the Debtors and the Reorganized Debtors, as well as each of the Chief Executive Officer, President, or any Vice President of any Debtor or Reorganized Debtor, is hereby authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, the Plan Documents, this Confirmation Order, and the Restructuring Transactions contemplated thereby or hereby.

17.    **Issuance and Distribution of New Common Stock.**    Reorganized PAH is authorized to issue the New Common Stock pursuant to the terms and conditions of the Plan. All of the shares of New Common Stock issued pursuant to the Plan are hereby deemed duly authorized, validly issued, fully paid and non-assessable. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

K&E 28549336.14

18.     **Exemption from Securities Law.** The issuance of the New Common Stock pursuant to the Plan and any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, pursuant to section 1145 of the Bankruptcy Code. In addition, under section 1145 of the Bankruptcy Code, any New Common Stock contemplated by the Plan and any and all settlement agreements incorporated therein, will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments and (b) the restrictions, if any, on the transferability of such security and instruments in the organizational documents set forth in the Plan Supplement or other constituent documents. Any and all clearing and settlement organizations are authorized and directed to permit the issuance of the New Common Stock without any restrictive legends at the request of the Debtors.

19.     **Cancellation of Existing Indebtedness and Securities.** On the Effective Date, except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement: (i) the obligations of the Debtors under the Bridge Loan Credit Agreement, the Senior Notes and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and the Reorganized Debtors,

K&E 28549336.14

and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided under the Plan and permitting the Senior Notes Indenture Trustee to perform any necessary functions under the Senior Notes Indenture with respect to distributions to Holders of Allowed Senior Notes Claims and to have the benefit of all the protections and other provisions of the Senior Notes Indenture in doing so and to assert the Senior Notes Indenture Trustee Charging Lien against distributions to Holders of Senior Note Claims for payment of any unpaid Senior Notes Indenture Trustee Fees; provided, further, however, that the preceding proviso shall not affect (i) the Senior Notes Indenture Trustee Charging Lien or (ii) the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan.  On and after the Effective Date, all duties and responsibilities of the Bridge Loan Agent and the Senior Notes Indenture Trustee, as applicable, shall be discharged unless otherwise specifically set forth in or provided for under the Plan.  Notwithstanding Confirmation of the Plan or the occurrence of the Effective Date, the

K&E 28549336.14

indemnification obligations of the Reorganized Debtors and the Bridge Loan Lenders under Sections 10.9 and 11.03 of the Bridge Loan Credit Agreement, respectively, shall survive the termination of the Bridge Loan Credit Agreement and the Reorganized Debtors shall remain obligated to pay all fees, expenses and indemnities of the Bridge Loan Agent under the Bridge Loan Credit Agreement.

20.    **Subordination.**    Except as otherwise expressly provided in the Plan, this Confirmation Order and any other order of the Court:  (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; and (c) the distributions under the Plan to the holders of Allowed Claims and Interests will not be subject to payment of a beneficiary of such discharged and terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such discharged and terminated subordination rights.

21.    **Release of Liens.**    Except as otherwise provided herein, in the Plan, the Exit Facility Credit Agreement, or in any contract, instrument, release or other agreement, or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder

K&E 28549336.14

of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns. Notwithstanding the foregoing, to the extent that a Person or Entity holds a Secured Claim that is valid under applicable state law, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates securing such Secured Claim shall not be released until such Allowed Secured Claim is satisfied in full, including the payment of interest, if applicable. The release of the prepetition Liens are automatic with the payment of the Allowed Secured Claim, without any further action or filings on the part of the Debtors.

22.     **Entry into the Exit Facility Credit Agreement**. The terms of the Exit Facility Credit Agreement are approved in all respects. The obligations of the applicable Reorganized Debtors under the Exit Facility Credit Agreement, including all related mortgages and security agreements, will, upon execution, constitute legal, valid, binding and authorized obligations of each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state or federal law.

23.     On the Effective Date, without any further action by the Court or the directors, officers or stockholders of any of the Reorganized Debtors, each Reorganized Debtor, as applicable, will be and is authorized to enter into the Exit Facility Credit Agreement.

24.     As of the Effective Date, without any further action by the Court or the directors, officers or stockholders of any of the Reorganized Debtors, the Liens and security interests granted or continued pursuant to the Exit Facility Credit Agreement will constitute legal, valid and enforceable Liens and security interests in the collateral (as defined in the Exit Facility Credit Agreement and any other documents to be executed and delivered pursuant thereto) and

37

such Liens and security interests will constitute legal, valid and binding obligations of the Reorganized Debtors.

25.    The holders of Liens under the Exit Facility Credit Agreement are authorized to file, with the appropriate authorities, financing statements and other documents (the "Perfection Documents") in order to evidence such Liens. Whether the Perfection Documents are filed prior to, on or after the Effective Date (i) such Perfection Documents will be valid, binding, and in full force and effect as of the Effective Date, and (ii) the Liens granted under or in connection with the Exit Facility Credit Agreement will become obligations of the Reorganized Debtors.

26.    In addition, on the Effective Date, without any further action by the Court or the directors, officers or stockholders of any of the Reorganized Debtors, each applicable Reorganized Debtor will be and is authorized to:  (a) execute, deliver, file and record any other contracts, instruments, agreements, guaranties or other documents executed or delivered in connection with the Exit Facility Credit Agreement; (b) perform all of its obligations under the Exit Facility Credit Agreement; and (c) take all such other actions as any of the responsible officers of such Reorganized Debtor may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the Exit Facility Credit Agreement.

27.    The guarantees, mortgages, pledges, Liens and other security interests granted and continued pursuant to the Exit Facility Credit Agreement have been and are granted in good faith and will be deemed not to constitute a fraudulent conveyance or fraudulent transfer, will not otherwise be subject to avoidance, and the priorities of such Liens and security interests will be as set forth in the Exit Facility Credit Agreement.

K&E 28549336.14

28.     Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Effective Date, any disputes arising under the Exit Facility Credit Agreement will be governed by the jurisdictional provisions therein.

29.     **Compromise of Controversies.** In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan and the entry of the Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to Article VIII.A of the Plan.

30.     **Assumption or Rejection of Contracts and Leases.** Except as set forth on the record of the Confirmation Hearing regarding the settlement between the Debtors and LifeBridge Investors, Inc., or as otherwise provided in the Plan, in this Confirmation Order or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, as of the Effective Date, Executory Contracts and Unexpired Leases, including those listed on the Assumed Executory Contract and Unexpired Lease List, shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected prior to the Effective Date by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to reject filed on or before the Effective Date; (iv) is identified as an Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Lease List; or (v) is the subject of a dispute regarding the Cure Claim.

31.     To the extent consent to assume or assign an Executory Contract or Unexpired Lease listed on the Assumed Executory Contract and Unexpired Lease List is required by governing law, such consent is granted pursuant to this Confirmation Order; provided, however,

39

to the extent a counterparty from which consent is required has objected to the assumption or assignment of any such Executory Contract or Unexpired Lease (and such objection has been sustained by the Court), then the counterparty's Executory Contract or Unexpired Lease will not be deemed to be assumed until such time the Debtors obtain the counterparty's consent.

32.    Nothing in the Plan, this Confirmation Order or the Cure Notice shall affect or discharge any amounts owed to the counterparties of the Debtors' assumed Executory Contracts or Unexpired Leases entered with (i) Blue Cross Blue Shield of Georgia Healthcare Plan, Inc. ("BCBSHP") and affiliate entities (collectively with BCBSHP, the "WellPoint Entities"), (ii) Office Depot, Inc. and (iii) Skillsoft Corporation.

33.    Nothing in the Plan, this Confirmation Order or the Cure Notice shall affect or discharge the right of the WellPoint Entities to have any dispute regarding prepetition cure amounts not timely resolved in the ordinary course of the Debtors' businesses to be heard by the Court, and all such amounts and rights are expressly being preserved following confirmation of the Plan.

34.    Any Executory Contract to which Aetna, Inc. or any of its affiliated companies (collectively, "Aetna") is a counterparty shall only be assumed effective upon entry by the Court of a stipulated order executed by and between Aetna and the Debtors that resolves Aetna's cure objection and provides for prompt payment of any stipulated cure amount. If Aetna and the Debtors are not able to timely agree to a stipulated cure amount, either party may submit the dispute to this Court for resolution.

35.    All of the Debtors' insurance policies listed on the Assumed Executory Contract and Unexpired Lease List, and any agreements, documents or instruments relating thereto, shall be treated as and deemed to be Executory Contracts under the Plan; provided, to the extent they

K&E 28549336.14

are not Executory Contracts, they will ride through bankruptcy and will remain unaffected by the Chapter 11 proceeding; provided further, that, for the avoidance of doubt, the Legacy D&O Liability Insurance Policies shall not be deemed Executory Contracts and, therefore, are not assumed or rejected under the Plan or this Confirmation Order. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies listed on the Assumed Executory Contract and Unexpired Lease List (other than the Legacy D&O Liability Insurance Policies), and any agreements, documents or instruments relating thereto.

36.    For the avoidance of doubt, the Debtors assume and/or reaffirm all obligations under their insurance policies (other than the Legacy D&O Liability Insurance Policies), including, without limitation, obligations to exhaust self-insured retentions ("SIR") on any claims made pursuant to these policies or under any prior policy year.

37.    With respect to AIG National Union Fire Insurance Company of Pittsburgh, PA policy number 01-351-13-73, on the Effective Date, the Debtors shall pay the Additional Premium Amount (as defined in such policy) for a six-year Discovery Period (as defined in such policy), provided that the Additional Premium Amount does not exceed $200,000.

38.    Each of the Debtors shall assume and cure the defaults on each of its Medicare Executory Contracts (the "Assumed Medicare Executory Contracts"), effective on the Confirmation Date. Such Assumed Medicare Executory Contracts shall include, as applicable, each of the Debtors' Health Insurance Benefit Agreements (Provider Agreements) and Enrollment Agreements.

39.    Notwithstanding anything to the contrary in the Plan or in this Confirmation Order, "cure," for purposes of the assumption by each of the Debtors of the Assumed Medicare Executory Contracts, shall consist of the agreement by each of the Debtors to continue its

41

participation in the Medicare program in the ordinary course of business, and to be governed by, and subject to, the terms and conditions of its Assumed Medicare Executory Contracts and the incorporated Medicare statutes, regulations, policies and procedures.

40.    Such terms and conditions under the Assumed Medicare Executory Contracts shall include, but shall not be limited to, the recoupment or recovery by the Centers for Medicare and Medicaid Services ("CMS") or its contractors of any Medicare overpayments determined to be due from the Debtors, whether related to prepetition or postpetition services, in accordance with the Medicare statute, regulations, policies and procedures.

41.    In addition, nothing in the Plan or this Confirmation Order shall release (or operate to enjoin) any claim of the United States, on behalf of CMS, against any of the Debtors or against any non-Debtor.  The assumption and cure of the Assumed Medicare Executory Contracts, or any rights or remedies thereunder, shall not be subject in any manner to, or limited in any manner by, any provision of the Bankruptcy Code or Bankruptcy Rules, including but not limited to any term in the Plan or the Confirmation Order granting security interests to other parties in the Debtors' healthcare accounts receivable.

42.    Furthermore, because any amount due shall be collected in the ordinary course, the United States, on behalf of CMS, shall not be required to file any separate claim in the bankruptcy to collect any amounts due to CMS under the Medicare program, whether via a proof of claim, claim for cure or administrative claim.  All of CMS's claims shall be unimpaired under 11 U.S.C. § 1124 and shall pass through the bankruptcy case unaffected by the Plan, Confirmation Order and/or any other court order in the Chapter 11 Cases.

43.    On the Effective Date, all Executory Contracts to which Holdings is a counterparty (other than those Executory Contracts that may be listed on the Rejected Contract

and Unexpired Lease List), including, without limitation, that certain Employment Agreement entered between Holdings and Elizabeth Arnold, dated as of October 5, 2012, as well as any other employment agreement entered between the Debtors' current officers and Holdings, will be assumed and assigned to PAH without the need for any further documentation or further action by the Bankruptcy Court.

44.    **Litigation Trust.**  The Litigation Trust shall be established and funded on the Effective Date and pursuant to the Plan to pursue certain Contributed Claims against the Potential Defendants and Witnesses.  On the Effective Date, all Contributed Claims—which shall not include (a) the rights of any of the Contributing Claimants or Released Parties to receive the distributions, if any, to which they are entitled under the Plan and (b) any actions, Causes of Action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, against any of the Released Parties—will be absolutely transferred and assigned to the Litigation Trust.  The Litigation Trustees shall not be obligated to pursue all Contributed Claims.

45.    The Plan and the Litigation Trust Agreement shall govern the management and administration of the Litigation Trust and the respective rights, powers and obligations of the Litigation Trustees and the Litigation Beneficiaries.  The Litigation Trust Agreement shall be binding on all Litigation Trust Beneficiaries who shall be deemed to have executed the Litigation Trust Agreement as of the Effective Date.

46.    **Prosecution of Objections to Claims.**  The Debtors, the Reorganized Debtors or the Litigation Trust, as applicable, shall have the exclusive authority to file, settle, compromise,

K&E 28549336.14

withdraw or litigate to judgment any objections to Claims, other than (1) Fee Claims, as permitted under the Plan (which Fee Claims shall be subject to objection by any Person with standing to object) and (2) Non-Subordinated Contribution and Reimbursement Claims and Trust Indemnification Claims (as defined in the Plan and below), where the Litigation Trust will have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment such Claims. From and after the Effective Date, the Reorganized Debtors or the Litigation Trust, as applicable, may settle or compromise any Disputed Claim without notice to or action, order or approval of the Bankruptcy Court. The Debtors, the Reorganized Debtors and the Litigation Trust may resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

47.    **Authorization to Consummate.** The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

48.    **Dissolution of Holdings.** On the Effective Date, Holdings shall be dissolved in accordance with the Plan and the Description of Transaction Steps filed with the Plan Supplement.

49.    **Distributions.** All distributions under the Plan shall be made in accordance with the terms and conditions set forth in the Plan.

50.    **Preservation of Causes of Action.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (excluding Contributed Claims of the Debtors which are transferred

K&E 28549336.14

to the Litigation Trust), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, as set forth in the Plan. The Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action (excluding Contributed Claims of the Debtors which are transferred to the Litigation Trust) shall be preserved notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the Debtors' failure to list any Causes of Action in the Disclosure Statement, the Plan, the Plan Supplement, or otherwise in no way limits the rights of the Reorganized Debtors as set forth above.

51.    Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trust retains and may enforce all rights of the Debtors to commence and pursue, as appropriate, any and all Causes of Action that are Contributed Claims of the Debtors, which are transferred to the Litigation Trust, whether arising before or after the Petition Date, including without limitation any actions specifically enumerated in **Exhibit G** of the Disclosure Statement, as set forth in the Plan. The Litigation Trust's rights to commence, prosecute or settle such Causes of Action that are Contributed Claims of the Debtors shall be preserved notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the failure to list any Causes of Action that are Contributed Claims of the Debtors in the Disclosure Statement, the Plan, the Plan Supplement, or otherwise in no way limits the rights of the Litigation Trust as set forth above.

52.    **Professional Compensation.** Professionals asserting a Fee Claim for services rendered before the Effective Date must file and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than

K&E 28549336.14

20 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than 40 days after the Effective Date.  To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.  Notwithstanding anything contrary to the foregoing contained in the Plan, in no event shall the Debtors' payments for professional fees and expenses for the period September 9, 2013 through the Effective Date relating to the investigation of the 2012 Transaction and the preparation for litigation of the Contributed Claims exceed $250,000, unless otherwise agreed to by the Ad Hoc Committee of Senior Noteholders in their sole and absolute discretion.

53.     Pursuant to this Confirmation Order, the Debtors are authorized to pay fees and expenses incurred by DHR International in connection with its search to recruit a Chief Executive Officer for the Debtors.  For the avoidance of doubt, DHR International shall not be deemed a "professional" under section 327 of the Bankruptcy Code because the firm was retained by the Debtors for the limited purpose of providing them with outside consulting services.

54.     **Administrative Claims.**  Subject to the provisions of sections 328(a), 330, and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of such Allowed Administrative Claim in accordance with the terms of the applicable contract or agreement governing such Claim, if any, or otherwise in the ordinary course of business.  Notwithstanding

K&E 28549336.14

anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, and/or this Confirmation Order, all Administrative Claims are to be paid in full in the ordinary course by the Debtors or Reorganized Debtors, as applicable, subject to the rights of the Debtors or Reorganized Debtors, as applicable to assert or apply, as applicable, any defenses, setoffs, credits, or discounts available under the applicable bankruptcy or non-bankruptcy law, and, for the avoidance of doubt, such Administrative Claims or defaults shall not be released, expunged, discharged, or enjoined by the Plan or the this Confirmation Order and there shall be no need or requirement for the Holders of such Administrative Claims to file Administrative Claims pursuant to the Administrative Claim Bar Date.

55.    **Return of Deposits.** All utilities, including any Person who received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during the Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Debtors or the Reorganized Debtors, as the case may be, at the conclusion of the Chapter 11 Cases, if not returned or applied earlier.

56.    **Release, Exculpation, Discharge and Injunction Provisions.**    The release, exculpation, discharge, injunction and related provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities to the extent provided therein.

57.    Notwithstanding anything herein to the contrary, none of the Potential Defendants and Witnesses shall be a Released Party or an Exculpated Party and none of the Potential Defendants and Witnesses shall receive or be deemed to receive a release or exculpation under the Debtors Releases, Third Party Releases, Exculpation or any other release granted under the Plan or this Confirmation Order.

K&E 28549336.14

58.     Notwithstanding any language in the Plan, the Disclosure Statement, any exhibit to either of the foregoing, or any other document that may suggest to the contrary, Janna King is and shall be a Released Party and an Exculpated Party (as such terms are defined in the Plan) and is not and shall not be a Potential Defendant and Witness (as such term is defined in the Plan).

59.     **Indemnification Obligations.** As of the Effective Date, each Reorganized Debtor's certificate of incorporation and/or bylaws (or other formation documents) shall provide, to the extent not satisfied by any available insurance coverage, for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, current (as of September 1, 2013) directors, officers or employees who were employed as directors, officers or employees of such Debtor, on or after September 1, 2013 at least to the same extent as the bylaws (or other formation documents) of each of the respective Debtors on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate its certificate of incorporation or bylaws (or other formation documents) before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such directors', officers' or employees' rights; provided, however, that there shall be no indemnification, defense, reimbursement, exculpation, liability, or advancement of fees and expenses by the Reorganized Debtors with respect to Subordinated Claims or Non-Subordinated Contribution and Reimbursement Claims (with such claims treated as set forth in Article III.C.7 and Article III.C.8, respectively, of the Plan); provided, further, that nothing in the Plan, Plan Supplement or any documentation related thereto shall in any way provide for any release, indemnification,

48

defense, reimbursement, exculpation, liability or advancement of fees and expenses of any of the Potential Defendants and Witnesses.

60.    The Litigation Trust shall, to the extent not satisfied by any available insurance coverage, indemnify and hold harmless each of the following Persons and Entities, solely to the extent such Person or Entity is not one of the Potential Defendants and Witnesses, for any and all Released Claims brought by any Person or Entity:  (i) Consenting Noteholders; (ii) Consenting Shareholders; (iii) the Consenting Noteholders' and Consenting Shareholders' respective predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and current (as of September 1, 2013) officers, directors, principals, members, partners, shareholders, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, advisory board members and other professionals; and (iv) the respective heirs, executors, estates, servants, and nominees of the Persons and Entities set forth in (i)-(iii) above (the "Trust Indemnification Claims").

61.    On the Effective Date, the Debtors and the Reorganized Debtors shall assume the Independent Director Indemnification Obligations.  The Independent Director Indemnification Obligations that are assumed, deemed assumed, honored, or reaffirmed by the Debtors under the Plan and this Confirmation Order shall remain in full force and effect, shall not be modified, reduced, discharged, impaired or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

62.    **Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the United States Trustee, until such time as a chapter 11 case for a Debtor shall be closed and each

K&E 28549336.14

Debtor shall pay any such fees as if no substantive consolidation has occurred for purposes of the Plan.

63.    **Compliance with Tax Requirements.**  Each holder of an Allowed Claim or Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.  The Debtors or Reorganized Debtors, and the Disbursing Agent, as applicable, are authorized to take all actions necessary or appropriate to comply with applicable withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

64.    **Exemption from Transfer Taxes.**  In accordance with section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or

50

K&E 28549336.14

agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

65.     **Documents, Mortgages and Instruments.**  Each federal, state, commonwealth, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

66.     **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the Plan or this Confirmation Order, any injunction or stay arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

67.     **Nonseverability of Plan Provisions Upon Confirmation.**  Each provision of the Plan is:  (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

68.     **Post-Confirmation Modifications.**    Without need for further order or authorization of the Court, the Debtors and the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors expressly reserve their respective

K&E 28549336.14