**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

February 19, 2018

**Discovery Conference – February 21, 2018 (1:30 pm ET).**
*PAH Litigation Trust v. Water Street Healthcare Partners, L.P., et al.*, No. 15-51238 (KG)

Dear Judge Gross:

Plaintiff PAH Litigation Trust (the "Trust") respectfully requests the Court's assistance in compelling Defendants to produce non-privileged documents which they have withheld as privileged. As the Court will recall, Defendants initially refused to identify the documents they were withholding on an itemized privilege log until this Court ordered them to do so. Order Re Privilege Logs, D.I. 678. The logs which Defendants eventually served (Exs. A-C) reveal that they have withheld hundreds of relevant, non-privileged documents. Prior to seeking the Court's further intervention, the Trust asked Defendants, a full month ago, to substantiate their claims of privilege over these documents, *see* Ex. D, but Defendants did not respond until a few hours before the Trust's filing deadline today.

The burden to establish that a document is protected from disclosure "rests on the party asserting the privilege." *Idenix Pharms., Inc. v. Gilead Scis., Inc.*, 195 F. Supp. 3d 639, 642 (D. Del. 2016) (Stark, J.). Accordingly, Defendants must show the following as to each document they have withheld:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (quoting *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979)). Where a party fails to demonstrate each element, the withheld documents must be produced. *Am. Silver LLC v Gen. Resonance LLC*, 2010 WL 11549368, at *3 (D. Md. Mar. 10, 2010) ("[B]ecause defendants have failed to carry their burden of showing that the documents are protected, . . . they must be produced."). Further, because the attorney-client privilege "obstructs the search for the truth," it "must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *United States v. Veolia Env. N. Am. Ops., Inc.*, 2014 WL 5511398, at *3 (D. Del. Oct. 31, 2014) (Stark, J.) (quoting *In re Grand Jury Investigation*, 599 F.2d at 1235).

As set forth below, the privilege logs that Defendants provided in response to the Court's Order show that they are withholding several categories of documents that are not privileged, including (i) communications disclosed to third parties; (ii) communications solely involving non-lawyers; and (iii) non-privileged documents attached to emails.

**Documents Disclosed To Third Parties**. First, Defendants have withheld hundreds of communications with third parties Jefferies & Co. Inc. ("Jefferies") and Ernst & Young ("EY") based on the incorrect claim that communications with third parties may be withheld if they merely "relat[e] to legal advice." Ex. E. That is not the law. "Disclosing a communication to a third party unquestionably waives the privilege." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007). There is no waiver <u>only</u> <u>if</u> the third party was "employed to assist a lawyer in rendering legal advice" and disclosure to the third party (i) was "nearly indispensable or served some specialized purpose in facilitating the attorney-client communications"; (ii) "served to translate information between the client and the attorney"; <u>and</u> (iii) was "made for the purpose of rendering legal advice, rather than business advice." *Dahl v. Bain Cap. Partners, LLC*, 714 F. Supp. 2d 225, 227-30 (D. Mass. 2010) (communications with financial advisor acting as company's sales agent held not privileged); *accord Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) (communications with EY held not privileged because it "acted to provide accounting advice rather than to assist [law firm] in providing legal advice"); *United States v. Ackert*, 169 F.3d 136, 140 (2d Cir. 1999) (communications with investment banker held not privileged because his "role was not as a translator or interpreter of client communications").

Here, Jefferies and EY played important <u>business</u> roles in connection with the sale, and Defendants have made no showing that they were employed to assist in the provision of legal advice by translating information between client and lawyer. Water Street engaged EY to perform accounting work, [REDACTED]. Ex. H at 5754-56. EY ultimately prepared a "Quality of Earnings" report that was shared with potential buyers to make Physiotherapy appear attractive; Defendants cannot hide their EY communications relating to the analysis of the Company's accounting practices behind claims of privilege. Similarly, Jefferies was the investment bank that led the sales process and solicited buyers for Physiotherapy—an important business role—and was not retained to aid in the provision of legal advice by translating information. In fact, Jefferies' Managing Director recently confirmed at deposition that Jefferies played <u>no</u> role in providing legal advice, Ex. G at 54:9-12, 57:9-12, 58:15-18 (testifying that Jefferies did not assist "counsel to Water Street in providing legal advice to Water Street," or any other attorney in providing legal advice), and actually did not act for Defendants at all—not even in a business capacity—because Jefferies was retained by Physiotherapy, not Defendants, *id.* at 22:13-20 (testifying that Physiotherapy, not Water Street, was Jefferies' client); Ex. F at 8 (Jefferies' engagement agreement with Physiotherapy [REDACTED]). Defendants' communications with EY and Jefferies are clearly not privileged.[1]

**Non-Lawyer Communications**. Defendants have also withheld hundreds of documents involving <u>only</u> non-lawyers. Because the privilege protects communications with "a member of the bar of a court," *Idenix*, 195 F. Supp. 3d at 642, courts apply heightened scrutiny where a party seeks to withhold non-lawyer communications. Some courts require "substantial proof" that the communication reflects legal advice provided by an attorney. *See, e.g., In re Behr Dayton Thermal Prod., LLC*, 298 F.R.D. 369, 375 (S.D. Ohio 2013) ("it is appropriate to require substantial proof that a communication between non-lawyers is privileged in order to protect the privilege from being construed too broadly") (internal quotation omitted). At a minimum, it must be "apparent that the communication from one employee to

---

[1] Defendants' generic privilege log entries do not even begin to show the necessary elements of privilege. *See, e.g.*, Ex. A at 754 ([REDACTED]); Ex. C at 132 ([REDACTED]).

2

another was for the purpose of the second employee transmitting the information to counsel for advice or the document itself must reflect the requests and directions of counsel." *Adams v. Gateway, Inc.*, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003) (quotation omitted). In other words, "a document passed between non-attorneys must reflect its integration into the legal advice communication chain to be eligible for attorney-client privilege protection." *Id*.

Defendants have not substantiated their assertions of privilege over non-lawyer communications. In most cases, Defendants do not even identify the attorney whose legal advice purportedly is reflected in the documents they have withheld, and their descriptions of the "legal advice" do not suggest that the emails are actually privileged. *See, e.g.*, Ex. A at 453 (████████████████████████████████████████████████████████); Ex. B at WPP_Priv_0089 (████████████████████████████████████████████████████████████████), WPP_Priv_0090 (████████████████████████████████████████); Ex. C at 232, 548, 555 (████████████████████████). These are but a few examples—Defendants have entirely withheld, or obliterated with entire-page redactions, hundreds of communications without lawyers. Defendants have not met their burden in seeking to withhold such documents as privileged.

**Non-Privileged Documents Attached To Emails**. The act of attaching a non-privileged document to a privileged communication does not make that document privileged. For this reason, claims of privilege must be independently substantiated as to an email's attachments. *E.g.*, *Hanson v. Wells Fargo Home Mortg., Inc.*, 2013 WL 5674997, at *4 (W.D. Wash. Oct. 17, 2013) ("Documents attached to or included in an attorneyclient [sic] communication are not automatically privileged, and the party asserting privilege must prove that each attachment is protected by privilege."); *Crabtree v. Experian Info Sols., Inc.*, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017) (same—each attachment "needs to have its own privilege basis"). Defendants have withheld more than 100 documents based solely on their assertion of privilege over emails to which the documents were attached, which again does not meet their burden. The email attachments which Defendants have withheld as privileged should be ordered produced.

*****

It is well-established that "[t]he production of an inadequate privilege log . . . may be viewed as a waiver to the privilege." *Schaeffer v. Tracey*, 2017 WL 465913, at *3 (D.N.J. Feb. 2, 2017); *AVX Corp. v. Horry Land Co.*, 2010 WL 4884903, at *11 (D.S.C. Nov. 24, 2010) (similar); *Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 2715164, at *4 (N.D. W.Va. Sept. 22, 2006) (similar). Defendants have had every opportunity to substantiate their claims of privilege but have failed to do so. Defendants initially served logs that did not indicate that they were withholding <u>any</u> non-lawyer communications. When the Trust probed, Defendants refused to identify the non-lawyer and third-party communications they were withholding, standing on a clearly-erroneous interpretation of a prior stipulation. It was only after this Court ordered Defendants to serve proper privilege logs that Defendants disclosed for the first time that they have been withholding <u>hundreds</u> of documents shared with third parties and that do not involve lawyers. But Defendants still failed to substantiate those withholdings, and ignored the Trust for a full month after it asked them to do so (*see* Ex. D), responding for the first time a few hours before the Trust's filing deadline today (*see* Ex. I).

Because Defendants have not substantiated the claims of privilege discussed in this Letter, and because Defendants' communications with third parties and without lawyers are not privileged, the Court should order Defendants to produce all such documents, as identified with specificity in Appendix A.

3

Respectfully Submitted,

B. Dylan Proctor