

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

CARRIE V. HARDMAN
*Partner* | (212) 294-5391
chardman@winston.com

February 20, 2018

*PAH Litigation Trust v. Water Street Healthcare Partners, L.P., et al.*, Adv. Pro. No. 15-51238 (KG) – Discovery Conference – February 21, 2018 at 1:30 pm ET

Dear Judge Gross:

      On behalf of Defendants, we write in response to the Litigation February 19, 2018 letter [Adv. Pro. D.I. 770]. The Litigation Trust sent Defendants a letter late on Friday night, January 19, 2018 (*id.* at Ex. D) demanding a response within three business days. As noted in the letter Defendants provided to the Litigation Trust on February 19, 2018 (*id.* at Ex. I), the Litigation Trust's letter arrived in the midst of an extremely busy deposition schedule (involving approximately 24 depositions in 22 business days). And while the Litigation Trust's privilege log inquiry did not receive the immediate attention that the Litigation Trust demanded, the Litigation Trust also let the issue go for a month, and did not once re-raise it before suddenly rushing into Court on its request for the February 21, 2018 status conference. Defendants sent their response to the Litigation Trust on February 19, 2018, which fully responds to and, we believe, fully resolves the issues raised in the Litigation Trust's letter of January 19, 2018. To the extent the Litigation Trust has any questions regarding Defendants' response, Defendants are willing to meet and confer to avoid wasting the Court's time on these issues, and propose that any outstanding issues remaining thereafter be resolved by the Discovery Mediator, rather than having the Court conduct an *in camera* document-by-document review.

      In their letter to the Court yesterday, the Litigation Trust raised a host of additional objections to Defendants' privilege logs—*see id.* at Appendix A—that have never been raised before, were not raised in the Litigation Trust's January 19 letter, and have never been the subject of a meet and confer that is a prerequisite to seeking Court intervention. It is virtually impossible for Defendants to address, within the 24-hour deadline, issues raised for the first time yesterday, nor is there any reason to do so on the accelerated timetable demanded by the Litigation Trust. Defendants are prepared to address these new issues promptly (within a week), but are unable to do so within 24 hours.

      **The Challenges to Jefferies' Privilege Log Are Not Ripe**. In its February 19, 2018 letter, the Litigation Trust also challenges, for the first time, every document listed on third party Jefferies' privilege log—a challenge that is both premature and improper. To the best of Defendants' knowledge, Jefferies received no advance communication from the Litigation Trust regarding any issues with Jefferies' privilege log before the Litigation Trust raised these issues with the Court in its February 19, 2018 letter, nor has Jefferies been invited to respond or be heard on these issues at the February 21, 2018 discovery conference. The Litigation Trust should not be relieved of its obligation (1) to meet and confer with Jefferies (and Defendants) ahead of the February 21, 2018 conference, and (2) to adequately notify Jefferies—the entity whose documents are at issue—of the February 21, 2018 conference, such that Jeffries has a meaningful opportunity to be heard.

**The Litigation Trust's Privilege Logs Reflect the Very Same Issues About Which it Complains**.  Nearly every objection that the Litigation Trust has asserted concerning Defendants' privilege logs would apply equally to the privilege logs that the Litigation Trust and the entities it purports to represent (Physiotherapy, Court Square and the Noteholders) have submitted.  Even a cursory review of the Litigation Trust's privilege log reveals that it is virtually identical in form and substance to the categorical and itemized privilege logs produced by Defendants.  *See* Ex. 1.  And the so-called "problems" with descriptions and alleged over-designation of documents as privileged applies equally to the logs and productions from the Litigation Trust, Physiotherapy, Court Square and the Noteholders.[1]  To the extent the Court rules in favor of the Litigation Trust, there will be a number of additional privilege assertions (by the Litigation Trust and its collaborators) that Defendants will seek to challenge.  The more efficient path is for the Court to order the parties to meet-and-confer further, so that similar privilege assertions by both parties can be raised and treated simultaneously by the Court.

**Defendants' Revised Privilege Logs Comply with Applicable Law**.  Should the Court wish to address the issues raised by the Litigation Trust at this stage, Defendants submit that they have fully complied with the requirements of applicable law.  Again, Defendants' revised privilege logs are virtually identical in form and substance to the revised privilege log produced by the Litigation Trust.  *See* Ex. 1.  In fact, the Defendants provided more than the same "loaded buzz phrases such as 'legal advice'. . ." (*see Nw. Airlines, Inc. v. Phillips*, 2009 WL 10687806, at *3 (D. Minn. Jan. 16, 2009)) by further describing the subjects or issues to which the legal advice related.

**Third-Party Documents and Non-Lawyer Communications**.  As to the Litigation Trust's argument regarding third-party documents, this issue has already been raised and addressed at the last conference before the Court.  *See* Ex. 2 (D.I. 668, Litigation Trust's Letter); Ex. 3 (D.I. 669, Defendants' Letter); Ex. 4 (D.I. 675, December 14, 2017 Hr'g Tr.).  As Defendants argued previously, it is "well established" that inclusion of agents, professionals or consultants (such as E&Y and Jefferies here) engaged to assist a party involved in a corporate transaction in communications that would otherwise be privileged does not constitute a waiver of such privilege.[2]  ***The Litigation Trust has done the exact same thing in claiming privilege with***

---

[1] For example, despite its position in its February 19, 2018 letter to the Court, the Litigation Trust recently attempted to claw back a document used as an exhibit in the deposition of PriceWaterhouseCoopers containing ***PwC's notes*** from an interview conducted by Dechert attorneys (post-transaction counsel to Physiotherapy).  Defendants submit that, post-transaction, such communications are adversarial in nature, and not in furtherance of legal advice sought or received by Dechert's client, Physiotherapy, and thus, not subject to any valid claim of privilege—attorney client, common interest, or otherwise.  Defendants intend to seek consensual resolution of these issues before raising any outstanding disputes with the Court.

[2] *See McCormack Terminal Co., Inc. v. F.A. Potts and Co., Inc., (In re F.A. Potts and Co., Inc.)*, 30 B.R. 708, 711 (E.D. Pa. 1983) (noting that there is a "well-established exception" to the waiver rule where accountants are involved); *see*, *e.g*., *Jedwab v. MGM Grand Hotels, Inc.*, 1986 WL 3426, at *2 (Del. Ch. Mar. 20, 1986) (Chancellor Allen stating that "[w]hether disclosure of a communication beyond the client and lawyer destroys the basis for the claim of privilege or not inevitably involves a judgment as to whether in the circumstances the person making the disclosure in fact regarded that disclosure as confidential and, if there was an expectation of confidentiality, whether the law will sanction that expectation.  Thus, ***for example where a client seeks legal advice as to the proper structuring of a corporate transaction and it is also prudent to seek professional guidance from an investment***

*regard to communications involving Court Square and Physiotherapy and their agents, professionals and consultants*. *See e.g.*, Ex. 1 at 31 & 32.

The same can be said for non-lawyer communications. As we explained in our February 19 letter to the Litigation Trust, Defendants' privilege logs describe the top email of each chain of communication produced on a redacted basis or withheld on account of privilege. Thus, to the extent a Defendant's privilege log item references a communication among non-lawyers, any redacted information from that email chain or any withheld document reflects or refers to a communication that in Defendants' view is privileged because it refers to information sought by or advice provided by outside counsel regarding the subject matter described in the respective privilege log entry. ***The Litigation Trust has done the exact same thing***. *See e.g.*, Ex. 1, Litigation Trust Privilege Log at 12-15, 27, 29.[3]

**Treatment of Certain Attachments as Privileged**. The Litigation Trust's complaint regarding attachments to privileged documents is misplaced. Attachments to privileged document may or may not be privileged, depending on the reason for attaching them. If an otherwise non-privileged document is attached to a privileged communication, it is the act of communicating that document (and not the underlying document itself) that is privileged. If the underlying attachment exists independently and was not produced solely for purposes of sending it to counsel for the purpose of obtaining legal advice, the document is producible in that form, but not as an attachment to the request for legal advice. It is well-established that "communications of facts are privileged even if the original facts are not. [] Thus, when letters to counsel included certain attachments, the fact that those documents were attached may be privileged, even if the originals are not." *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009). As shown in Defendants' February 19, 2018 response to the Litigation Trust, each document raised by the Litigation Trust in its January 19, 2018 letter has either been substantiated as a privileged document and/or the Defendants have proposed a resolution as to the dispute with respect thereto. The Litigation Trust's blanket objection in its February 19, 2018 letter to nearly every attachment listed on the Defendants' privilege logs is overly broad and, thus, improper.

In sum, Defendants regret that the Court has been troubled prematurely with these issues, and ask that the Parties be permitted time to resolve the issues on their own. Should any issues relating to the assertions of privilege remain outstanding after that process has run its course, Defendants submit that such issues should be addressed by the previously-appointed Discovery Mediator, rather than having the Court conduct an *in camera* document-by-document review.

---

*banker, it would hardly waive the lawyer-client privilege for a client to disclose facts at a meeting concerning such transaction at which both his lawyer and his investment banker were present*. Knowledgeable participants in such transactions would themselves regard disclosures at such a meeting as confidential and the law would, in my opinion, tend to validate that judgment." (emphasis added)).

[3] The only difference between the Defendants and Litigation Trust's logs is that the Litigation Trust names in the description the underlying counsel providing the legal advice. In an effort to resolve this issue, Defendants proposed, in their February 19, 2018 letter, that, to the extent not already provided through metadata, they would identify the attorneys or firm from whom Defendants sought or received legal advice—though, as the Litigation Trust is fully aware, these are virtually all attorneys from Kirkland & Ellis. *See* Adv. Pro. D.I. 770, Ex. D.



February 20, 2018
Page 4

Respectfully submitted,

Carrie V. Hardman