### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| PHYSIOTHERAPY HOLDINGS, INC., et al., | ) |
| | ) Case No. 13-12965 (KG) |
| Debtors. | ) (Jointly Administered) |
| PAH LITIGATION TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 15-51238 (KG) |
| | ) |
| WATER STREET HEALTHCARE PARTNERS, | ) |
| L.P., et al., | ) |
| | ) |
| Defendants. | ) |

## AMENDED ANSWER OF THE WIND POINT DEFENDANTS

Defendants Wind Point Partners IV, L.P., Wind Point IV Executive Advisor Partners, L.P., Wind Point Associates IV, LLC, and Wind Point Investors IV, L.P. (collectively, except where otherwise specifically noted, "Defendants" or "Wind Point"),[1] by their undersigned counsel, hereby answer the Complaint filed on September 1, 2015 ("Complaint") by Plaintiff, the PAH Litigation Trust ("Plaintiff" or the "Litigation Trust"), in the above-captioned adversary proceeding as follows:

1.     Defendants deny the allegations set forth in paragraph 1 of the Complaint, except admit that Plaintiff purports to bring this action under Pennsylvania and federal fraudulent transfer laws to recover the portion of the proceeds of the April 2012 sale (the "Transaction") of Physiotherapy Associates Holdings, Inc. ("PTA" or the "Company") to affiliates of another private equity investor, Court Square Capital Partners II, L.P. ("Court Square") that were paid to Defendants.  Defendants deny that Plaintiff is entitled to the relief requested in the Complaint.

2.     Defendants deny the allegations in paragraph 2 of the Complaint, except admit and aver that: (i) Wind Point and certain of its affiliates (and, upon information and belief, that

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Complaint.

defendant Water Street Healthcare Partners, L.P. and certain of its affiliates (together, "Water Street")) are private equity investors and fund managers; (ii) in the two years preceding the Transaction, Water Street and Wind Point in the aggregate owned approximately 90 percent of the outstanding common stock of PTA; and (iii) the Company's stockholders (including, among others, Water Street, Wind Point and their investors) received cash consideration upon the closing of the Transaction, with the balance of the proceeds being used to pay certain transaction fees and repay all of PTA's existing debt (approximately $179.4 million).

3.      Defendants deny the allegations set forth in paragraph 3 of the Complaint, except admit and aver that: (i) prior to the Transaction, PTA, a privately held company headquartered in Exton, Pennsylvania, was one of the largest providers of outpatient physical therapy services in the United States, with roughly 650 clinics in 33 states as of 2012; (ii) PTA was the product of a merger of PTA with Benchmark Medical, Inc. ("Benchmark") in 2007 and subsequent acquisitions; (iii) after merging with Benchmark, PTA had four different billing systems in place, which was suboptimal; (iv) in 2010, to improve its revenue cycle management, PTA (a) transitioned to a new revenue cycle management software system, which consolidated the four legacy billing systems into a single system to drive efficiencies and improve cash flows, and (b) switched from handling its own billings and collections to using an outsourced specialist service provider, IKS, to reduce costs and consolidate collections under one system; and (v) not surprisingly, implementing these company-wide changes led to various issues that adversely affected both billings and cash collections, all of which were disclosed to, and known by, prospective purchasers of, and lenders to, the Company.

4.      Defendants deny the allegations set forth in paragraph 4 of the Complaint.

5.      Defendants deny the allegations set forth in paragraph 5 of the Complaint, except admit and aver that Deloitte & Touche LLP was engaged to assist Court Square and PTA in

31713267v1

- 2 -

connection with issues relating to the audit of PTA's financial statement for the year ending December 31, 2012.

6.    Defendants deny the allegations set forth in paragraph 6 of the Complaint.

7.    Defendants deny the allegations set forth in paragraph 7 of the Complaint.

8.    Defendants deny the allegations set forth in paragraph 8 of the Complaint.

9.    Defendants lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Complaint relating to Water Street holding various investment committee meetings, and deny the remaining allegations set forth in paragraph 9 of the Complaint.  By way of further response, Defendants deny Plaintiff's characterization of referenced documents (which are not attached to the Complaint), as the documents themselves constitute the best evidence of their contents.

10.    Defendants deny the allegations set forth in paragraph 10 of the Complaint.

11.    Defendants deny the allegations set forth in paragraph 11 of the Complaint, except admit that Plaintiff purports to bring this action under Pennsylvania and federal fraudulent transfer laws to recover the portion of the proceeds of the Transaction that were paid to Water Street and Wind Point, and aver that the Court has determined that Delaware, not Pennsylvania, fraudulent transfer law applies to Plaintiff's state law constructive fraudulent transfer claims. Defendants deny that Plaintiff is entitled to the relief requested in the Complaint.

12.    Defendants admit upon information and belief the allegations set forth in paragraph 12 of the Complaint, except lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first two sentences thereof with respect to the time period after the closing of the Transaction.

13.    Defendants (i) admit that pursuant to the Plan, the PAH Litigation Trust was formed, and certain claims were purportedly assigned to the Litigation Trust, (ii) respectfully

refer the Court to the Plan and Litigation Trust Agreement for a complete and accurate statement of their terms, and (iii) state that the balance of paragraph 13 of the Complaint contains legal conclusions to which no response is required.

14.     Defendants deny the allegations set forth in paragraph 14 of the Complaint, except admit and aver upon information and belief that following the merger of PTA and Benchmark in 2007, Water Street owned approximately 53.2 percent of PTA's common shares, and that, as of the date of the Transaction, Water Street's ownership interest was approximately 51.4 percent.

15.     Defendants admit upon information and belief the allegations set forth in paragraph 15 of the Complaint.

16.     Defendants deny the allegations set forth in paragraph 16 of the Complaint, except admit and aver that following the merger of PTA and Benchmark in 2007, Wind Point owned approximately 35 percent of PTA's common shares, which ownership interest grew modestly thereafter, and that, as of the date of the Transaction, Wind Point's ownership interest was approximately 38 percent.

17.     Defendants admit the allegations set forth in paragraph 17 of the Complaint.

18.     The allegation set forth in paragraph 18 of the Complaint constitutes a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in paragraph 18 of the Complaint, except admit that as of the date of the Transaction, Water Street and Wind Point owned approximately 51.4 and 38 percent, respectively, of the common shares of PTA.

19.     Defendants deny the allegations set forth in paragraph 19 of the Complaint, except admit upon information and belief that following the Transaction, Water Street Healthcare Partners LLC distributed to the limited partners of the Water Street fund that was the

initial recipient of the sale proceeds each limited partner's allocable share thereof, and aver that, upon information and belief, all of the so-called "subsequent transferees" that received distributions from Water Street have been dismissed from the case.

20.    Defendants deny the allegations set forth in paragraph 20 of the Complaint, except admit that following the Transaction, Wind Point distributed to the limited partners of the Wind Point fund that was the initial recipient of the sale proceeds each limited partner's allocable share thereof, and aver that, upon information and belief, the vast majority of the so-called "subsequent transferees" that received distributions from Wind Point have been dismissed from the case.

21.    Defendants admit that this is a core proceeding, and state that the balance of paragraph 21 of the Complaint constitutes legal conclusions to which no response is required. Pursuant to Fed. R. Bankr. P. 7012(b) and Del. Bankr. L.R. 7012-1, Defendants do not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

22.    The allegation set forth in paragraph 22 of the Complaint constitutes a legal conclusion to which no response is required.  To the extent a response is required, Defendants admit the allegations set forth in paragraph 22 of the Complaint.

23.    Defendants deny the allegations set forth in paragraph 23 of the Complaint and Heading A, except admit that, following the merger of PTA and Benchmark in 2007, Water Street and Wind Point owned approximately 53.2 percent and 38 percent, respectively, of PTA's common shares, and that, as of the date of the Transaction, Water Street and Wind Point owned approximately 51.4 percent and 38 percent, respectively, of PTA's common shares.

24.    Defendants deny the allegations set forth in paragraph 24 of the Complaint, except (i) admit and aver that James G. Connelly, III, Curt M. Selquist, Richard R. Kracum, Robert Womsley, Daniel J. Connors, and James W. McLane were members of PTA's Board of Directors when the sale to Court Square was approved in 2012; (ii) admit that Richard R. Kracum was a Managing Director at Wind Point at the time of the Board's approval of the Transaction, (iii) admit that, upon the closing of the Transaction, their Board tenures ended; and (iv) lack knowledge or information sufficient to form a belief as to the truth of the allegations relating to the beginning dates for their service as Board members.

25.    Defendants deny the allegations set forth in paragraph 25 of the Complaint, except admit upon information and belief that the individuals listed therein held the respective positions as officers of the Company at various points of time prior to (and, in certain instances, following) the closing of the Transaction, and lack knowledge or information sufficient to form a belief as to the truth of the allegations relating to the exact beginning and end dates for the employment of Messrs. DeVoe, Bode, Limeri, Grabaskas, Walden and Sloyer.

26.    Defendants deny the allegations set forth in paragraph 26 of the Complaint, except admit and aver that on or about June 28, 2007, Water Street Healthcare Management, L.P., Wind Point Investors IV, L.P., Physiotherapy Associates, Inc., and Benchmark Medical, Inc. entered into a management agreement (the "Management Agreement"), in which Water Street Healthcare Management, L.P. and Wind Point Investors IV, L.P. agreed, among other things, "to consult with and advise the board of directors of the Company and board of directors of Parent and the management of the Company and the Parent in such manner and on such business and financial matters as may be reasonably requested from time to time and as may be reasonably agreed to by Water Street and Wind Point, including: (i) general advisory services in relation to the Company's management and business, (ii) identification, analysis, support and

negotiation of acquisitions and dispositions, (iii) analysis, support and negotiation of financing alternatives, including in connection with acquisitions, capital expenditures and refinancings of existing indebtedness, (iv) finance functions, including assistance in the preparation of financial projections and (v) strategic planning functions, including the evaluation of major strategic alternatives."  By way of further response, Defendants respectfully refer the Court to the Management Agreement for a complete and accurate statement of its terms.

27.    Defendants deny the allegations set forth in paragraph 27 of the Complaint.

28.    Defendants admit the allegations set forth in paragraph 28 of the Complaint.

29.    Defendants admit upon information and belief the allegations set forth in the first sentence of paragraph 29 of the Complaint, and lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the final sentence of paragraph 29 of the Complaint.

30.    Defendants admit upon information and belief the allegations set forth in paragraph 30 of the Complaint.

31.    Defendants deny the allegations set forth in paragraph 31 of the Complaint, except admit upon information and belief that the Company generally recorded revenue when the service was provided, but before payment was actually received.

32.    Defendants admit upon information and belief the allegations set forth in the second sentence of paragraph 32 of the Complaint, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 32.

33.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first two sentences of paragraph 33 of the complaint, and deny the allegations in the third sentence of paragraph 33 of the Complaint.

34.     Defendants deny the allegations set forth in paragraph 34 of the Complaint to the extent that responses are required, except admit that accounting estimates must generally be "reasonable."   Defendants specifically deny that the "look back" method was (and is) the industry standard for making reasonable estimates of net revenue and was based solely on actual historical collections and otherwise deny Plaintiff's characterizations set forth in paragraph 34 of the Complaint.

35.     Defendants deny the allegations set forth in paragraph 35 of the Complaint, except admit that, from 2007 to sometime in 2010, the Company estimated its net revenue based on a "look back" method.

36.     Defendants deny the allegations set forth in paragraph 36 of the Complaint and Heading C, except admit upon information and belief that in or around June 2009 PTA informed its lenders, among other things, that, through April 2009, year-to-date revenue was down versus the prior year, bad debt as a percentage of net revenue had increased since September 2007, the Company was losing market share, its EBITDA as a percent of revenue was below the industry norm and its days sales outstanding ("DSO") was above the industry norm.

37.     Defendants deny the allegations set forth in paragraph 37 of the Complaint.

38.     Defendants deny the allegations set forth in paragraph 38 of the Complaint, except admit and aver upon information and belief that, as a result of issues that arose beginning in 2010 during the implementation of company-wide measures to improve revenue cycle management, PTA fell significantly behind on both its billings and cash collections, resulting in a significant increase in DSO.

39.     Defendants deny the allegations set forth in paragraph 39 of the Complaint, except admit and aver that in 2010, management, with the concurrence of the Company's auditors at KPMG LLP, made efforts to improve PTA's method of estimating net revenues by

switching from the look back method (which management concluded was no longer a reasonable way to estimate net revenues) to an alternative method (subsequently referred to as the "rate bridge" method).

40.    Defendants deny the allegations set forth in paragraph 40 of the Complaint, except admit and aver that, in or about 2010, the Company changed its method of estimating net revenue, with the concurrence of PTA's auditors at KPMG LLP, from a "look back" to a "rate bridge" method, and that such change was fully disclosed to all prospective purchasers of the Company.

41.    Defendants deny the allegations set forth in paragraph 41 of the Complaint, except admit and aver that, in or about 2010, the Company changed its method of estimating net revenue, with the concurrence of PTA's auditors at KPMG LLP, from a "look back" to a "rate bridge" method, and that such change was fully disclosed to all prospective purchasers of the Company.

42.    Defendants deny the allegations set forth in paragraph 42 of the Complaint.

43.    Defendants deny the allegations set forth in paragraph 43 of the Complaint, except admit that in or around November of 2010 the Board of Directors of PTA was informed of management's change from the "look back" to the "rate bridge" method of estimating net revenue that occurred in 2010.

44.    Defendants deny the allegations set forth in paragraph 44 of the Complaint.

45.    Defendants admit upon information and belief the allegations set forth in paragraph 45 of the Complaint, except aver that the solicitation and receipt of bids occurred with the involvement of Jefferies & Company, Inc. ("Jefferies"), as financial advisor to the Company, and deny the allegations in Heading D.

46.    Defendants deny the allegations set forth in the first sentence of Paragraph 46 of the Complaint.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the second sentence of Paragraph 46 of the Complaint.

47.    Defendants deny the allegations set forth in paragraph 47 of the Complaint.

48.    Defendants deny the allegations set forth in paragraph 48 of the Complaint, except admit and aver that the email referenced in paragraph 48 was prepared after the Court Square transaction closed, was not sent to Defendants, and related to a problem the Company experienced under the look back method of accounting that PTA management had switched to after the closing, and is thus irrelevant to whether PTA's pre-closing financial statements were the subject of accounting manipulations. By way of further response, Defendants deny Plaintiff's characterization of referenced documents, as the documents themselves constitute the best evidence of their contents.

49.    Defendants deny the allegations set forth in paragraph 49 of the Complaint, except admit and aver that the email referenced in paragraph 49 was prepared after the Court Square transaction closed, was not sent to Defendants, and related to a problem the Company experienced under the look back method of accounting that PTA management had switched to after the closing, and is thus irrelevant to whether PTA's pre-closing financial statements were the subject of accounting manipulations By way of further response, Defendants deny Plaintiff's characterization of the referenced document, as the document itself constitutes the best evidence of its contents.

50.    Defendants deny the allegations set forth in paragraph 50 of the Complaint, and refers Plaintiff to the quoted emails and related deposition testimony for a complete statement of their terms, the context in which they were prepared, and the message the senders were attempting to convey.

31713267v1

51.     Defendants deny the allegations set forth in paragraph 51 of the Complaint.

52.     Defendants deny the allegations set forth in paragraph 52 of the Complaint.

53.     Defendants deny the allegations set forth in paragraph 53 of the Complaint, except admit and aver that the emails referenced in paragraph 53 were sent after the Court Square transaction closed, were not sent to Defendants, and relate to a potential over-accrual of visits that occurred after the Court Square transaction closed, and are thus irrelevant to whether PTA's pre-closing financial statements were the subject of accounting manipulations.  By way of further response, Defendants deny Plaintiff's characterization of referenced documents, as the documents themselves constitute the best evidence of their contents.

54.     Defendants deny the allegations set forth in paragraph 54 of the Complaint, except admit and aver upon information and belief that (i) the amounts recorded on PTA's general ledger in 2011 for OR net revenues were estimates under the rate bridge method, whereas the amounts reported on the aged trial balance were derived from the NextGen accounting system, (ii) in light of the fact that the amounts recorded on the general ledger and aged trial balance were derived from different sources, the amounts recorded did not match, and (iii) PTA management reconciled the difference for the sole purpose of calculating PTA's bad debt reserve.  Defendants refer Plaintiff to the deposition testimony of Andrew DeVoe and the expert reports of Tim Renjilian for a more detailed description of the reconciliation process that was employed by PTA management.

55.     Defendants deny the allegations set forth in paragraph 55 of the Complaint.  By way of further response, Defendants deny Plaintiff's characterizations of the referenced documents, as the documents themselves constitute the best evidence of their contents.

56.     Defendants deny the allegations set forth in paragraph 56 of the Complaint. By way of further response, Defendants deny Plaintiff's characterization of the referenced document, as the document itself constitutes the best evidence of its contents.

57.     Defendants deny the allegations set forth in paragraph 57 of the Complaint, except admit and aver that most if not all of the emails referenced in paragraph 57 were prepared after the Court Square transaction closed, were not sent to Defendants, and related to a problem the Company experienced under the look back method of accounting that PTA management had switched to after the closing, and are thus irrelevant to whether PTA's pre-closing financial statements were the subject of accounting manipulations.   By way of further response, Defendants deny Plaintiff's characterizations of the referenced documents, as the documents themselves constitute the best evidence of their contents.

58.     Defendants deny the allegations set forth in paragraph 58 of the Complaint.

59.     Defendants deny the allegations set forth in paragraph 59 of the Complaint and in Heading E.

60.     Defendants deny the allegations set forth in paragraph 60 of the Complaint, except admit that members of PTA's Board of Directors were provided information from management regarding PTA's cash collections on a monthly or periodic basis.

61.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 61 of the Complaint.

62.     Defendants deny the allegations set forth in paragraph 62 of the Complaint, except admit and aver that PTA's Board of Directors received monthly or periodic reports (including one for the month of August 2010) from PTA's Chief Financial Officer addressing, among other things, revenues, cash collections and DSO, to which the Court is referred for a complete and accurate statement of their terms.  Defendants deny Plaintiff's characterizations of

31713267v1

the referenced document (which is not attached to the Complaint), as the document itself constitutes the best evidence of its contents.

63.     Defendants deny the allegations set forth in paragraph 63 of the Complaint.

64.     Defendants deny the allegations set forth in paragraph 64 of the Complaint, except admit that in or around the first quarter of 2011, certain members of PTA's management made a presentation to PTA's Board of Directors entitled "Revenue Cycle Management: The Path Forward, February 2011," to which the Court is referred for a complete and accurate statement of its terms.  Defendants deny Plaintiff's characterizations of the referenced document (which is not attached to the Complaint), as the document itself constitutes the best evidence of its contents.

65.     Defendants deny the allegations set forth in paragraph 65 of the Complaint, except admit that the February 2011 presentation, to which the Court is referred for a complete and accurate statement of its terms, provided several suggested metrics for PTA's Board of Directors to measure success going forward.  Defendants deny Plaintiff's characterizations of the referenced document (which is not attached to the Complaint), as the document itself constitutes the best evidence of its contents.

66.     Defendants deny the allegations set forth in paragraph 66 of the Complaint.

67.     Defendants deny the allegations set forth in paragraph 67 of the Complaint.

68.     Defendants deny the allegations set forth in paragraph 68 of the Complaint.

69.     Defendants deny the allegations set forth in paragraph 69 of the Complaint, except admit and aver that PTA retained Huron Consulting in early 2011 to review and improve PTA's revenue cycle management and received periodic reports from Huron regarding the issues PTA faced and the improvements being made as a result of Huron's efforts.

70.     Defendants deny the allegations set forth in paragraph 70 of the Complaint. Defendants deny Plaintiff's characterizations of the referenced document, as the document itself constitutes the best evidence of its contents.

71.     Defendants deny the allegations set forth in paragraph 71 of the Complaint, except admit and aver that PTA retained Huron Consulting in early 2011 to review and improve PTA's revenue cycle management and received periodic reports from Huron regarding the issues PTA faced and the improvements being made as a result of Huron's efforts.  By way of further response, Defendants deny Plaintiff's characterization of the referenced document, as the documents itself constitutes the best evidence of its contents.

72.     Defendants deny the allegations set forth in paragraph 72 of the Complaint, except admit and aver that the Company's CFO sent a one-page analysis to two members of the Company's Board, to which the Court is referred for a complete and accurate statement of its terms, which noted a difference of $200,000 on an originally estimated collectible amount of over $29 million of monthly net revenues, reflecting different methods temporarily used to record the estimated collectible amount of accounts receivable.  Defendants deny Plaintiff's characterizations of the referenced document (which is not attached to the Complaint), as the document itself constitutes the best evidence of its contents.

73.     Defendants deny the allegations set forth in paragraph 73 of the Complaint.

74.     Defendants deny the allegations set forth in paragraph 74 of the Complaint and Heading F, except admit and aver upon information and belief that in or about January or February 2012, two potential bidders for PTA – Clayton Dubilier & Rice ("CD&R") and New Mountain Capital ("New Mountain") – advised Jefferies that they were not prepared to submit a final bid to acquire PTA at that time, and they shared with PTA management and their advisors certain comments and questions that their own accounting advisors at PricewaterhouseCoopers

31713267v1

LLP ("PwC") and Deloitte & Touche LLP ("Deloitte"), respectively, had raised during their due diligence with regard to PTA's accounting methods and financial results, which comments were summarized and rebutted by PTA's management in presentations to PTA's Board of Directors and also to the aforementioned prospective purchasers (CD&R and New Mountain) and their advisors.

75.     Defendants deny the allegations set forth in paragraph 75 of the Complaint, except admit and aver that a written summary and rebuttal of PwC's comments and questions regarding PTA's accounting methods and financial results was provided by PTA's management to PTA's Board of Directors on or about January 24, 2012, to which the Court is referred for a complete and accurate statement of its terms.

76.     Defendants deny the allegations set forth in paragraph 76 of the Complaint, except admit and aver that a written summary or copy of Deloitte's comments, and a rebuttal thereto, regarding PTA's accounting methods and financial results was provided by PTA's management to PTA's Board of Directors on or about February 3, 2012, to which the Court is referred for a complete and accurate statement of its terms.

77.     Defendants deny the allegations set forth in paragraph 77 of the Complaint and Heading G.

78.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 78 of the Complaint. By way of further response, Defendants deny Plaintiff's characterization of referenced documents (which are not attached to the Complaint), as the documents themselves constitute the best evidence of their contents.

79.     Defendants deny the allegations set forth in paragraph 79 of the Complaint.

80.     Defendants deny the allegations set forth in paragraph 80 of the Complaint, except admit that Wind Point's Board designee received copies of the monthly or periodic cash

collection reports and summaries of and rebuttals to the PwC and Deloitte comments that were provided to the other members of PTA's Board of Directors, and refer the Court to the cash collection reports and other referenced documents for a complete and accurate statement of their terms.  By way of further response, Defendants deny Plaintiff's characterization of referenced documents (which are not attached to the Complaint), as the documents themselves constitute the best evidence of their contents.

81.    Defendants deny the allegations set forth in paragraph 81 of the Complaint and Heading H.

82.    Defendants deny the allegations set forth in paragraph 82 of the Complaint, except admit and aver upon information and belief that Court Square and its underwriters prepared and circulated to prospective lenders an offering memorandum in or about April 2012, to which the Court is referred for a complete and accurate statement of its terms.  By way of further response, Defendants deny Plaintiff's characterization of the referenced document (which are not attached to the Complaint), as the document itself constitutes the best evidence of its contents.

83.    Defendants deny the allegations set forth in paragraph 83 of the Complaint.

84.    Defendants deny the allegations set forth in paragraph 84 of the Complaint.

85.    Defendants deny the allegations set forth in paragraph 85 of the Complaint. By way of further response, Defendants deny Plaintiff's characterization of the referenced document, as the document itself constitutes the best evidence of its contents.

86.    Defendants deny the allegations set forth in paragraph 86 of the Complaint and Heading I, except admit that on or about February 22, 2012, PTA, Physiotherapy Holdings, Inc., Physiotherapy Merger Sub, Inc. ("Merger Sub") and Water Street Healthcare Partners, L.P. entered into an Agreement and Plan of Merger ("Merger Agreement"), to which the Court is

referred for a complete and accurate statement of its terms, to effectuate the sale of PTA to Court Square.  By way of further response, Defendants deny Plaintiff's characterization of the Merger Agreement, as the agreement itself constitutes the best evidence of its contents.

87.    Defendants deny the allegations set forth in paragraph 87 of the Complaint, except admit upon information and belief that the Transaction was financed by Court Square and its affiliates through: (i) a Term Loan in the amount of $100 million; (ii) $210 million in Senior Notes; (iii) an equity investment by Court Square of approximately $213.3 million; (iv) a management equity rollover in the amount of approximately $3.9 million; and (v) a minority investment by General Electric Corporation of approximately $1 million.

88.    Defendants deny the allegations set forth in paragraph 88 of the Complaint, except admit upon information and belief that the Transaction was accomplished in several steps as described in the Merger Agreement and related Transaction closing documents, to which the Court is referred for a complete and accurate statement of their terms, pursuant to which, among other things: (i) Merger Sub (an entity owned and controlled by Court Square) became the initial obligor under the Term Loan and Senior Notes; (ii) following the closing, PTA assumed Merger Sub's obligations under the Term Loan and Senior Notes; (iii) the common shares of PTA held by Water Street, Wind Point and the other selling stockholders were exchanged for cash consideration; and (iv) the balance of the sale proceeds were used to pay certain transaction fees and to repay all of PTA's preexisting debt (approximately $179.4 million).

89.    Defendants deny the allegations set forth in paragraph 89 of the Complaint.

90.    Defendants deny the allegations set forth in paragraph 90 of the Complaint and in Heading J, except admit and aver that Deloitte & Touche LLP was engaged to assist Court Square and PTA in connection with issues relating to the audit of PTA's financial statement for the year ending December 31, 2012.

31713267v1

91.     Defendants deny the allegations set forth in paragraph 91 of the Complaint, except admit that sometime in 2013 Keller Arnold, with the assistance of Deloitte & Touche LLP, prepared a memorandum to the file that contained, among other things, the quoted language (with which Defendants disagree and deny is true or accurate), and refers Plaintiff to the memorandum for a complete statement of its terms.  By way of further response, Defendants deny Plaintiff's characterization of the referenced document, as the document itself constitutes the best evidence of its contents.

92.     Defendants deny the allegations set forth in paragraph 92 of the Complaint and in Heading K.

93.     Defendants deny the allegations set forth in paragraph 93 of the Complaint, and state that to the extent paragraph 93 contains legal contentions, no further response is required.

94.     Defendants deny the allegations set forth in paragraph 94 of the Complaint, except admit and aver that a portion of the sale proceeds was paid to Water Street and Wind Point, which, in turn, distributed those proceeds to their respective limited partners.

95.     Defendants deny the allegations set forth in paragraph 95 of the Complaint.

96.     Defendants deny the allegations set forth in paragraph 96 of the Complaint.

97.     Defendants deny the allegations set forth in paragraph 97 of the Complaint and in Heading L.

98.     Defendants deny the allegations set forth in paragraph 98 of the Complaint.

99.     Defendants deny the allegations set forth in paragraph 99 of the Complaint and heading M.  By way of further response, Defendants deny Plaintiff's characterization of the referenced document, as the document itself constitutes the best evidence of its contents.

100.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 100 of the Complaint, except admit and aver upon

information and belief that PTA's business underperformed Court Square's expectations in 2012 for a variety of reasons unrelated to the allegations in the Complaint.

101. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 101 of the Complaint, except admit and aver upon information and belief that PTA's business underperformed Court Square's expectations in 2012 for a variety of reasons unrelated to the allegations in the Complaint.

102. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 102 of the Complaint, except admit and aver upon information and belief that PTA's business underperformed Court Square's expectations in 2012 for a variety of reasons unrelated to the allegations in the Complaint.

103. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 103 of the Complaint, except admit and aver upon information and belief that PTA's business underperformed Court Square's expectations in the first quarter of 2013 for a variety of reasons unrelated to the allegations in the Complaint.

104. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 104 of the Complaint, except admit upon information and belief that in March or April 2013, KPMG determined and advised PTA that it would be unable to complete its 2012 year-end audit and issue a clean audit opinion without performing additional procedures.

105. Defendants admit upon information and belief the allegations set forth in paragraph 105 of the Complaint.

106. Defendants deny the allegations set forth in paragraph 106 of the Complaint, except admit and aver upon information and belief that Deloitte & Touche LLP was engaged in 2013 to assist Court Square and PTA in connection with issues relating to the audit of PTA's

financial statement for the year ending December 31, 2012 and issued a report in connection with its work, to which Plaintiff is referred for a complete statement of its terms.

107.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 107 of the Complaint and in Heading N, except admit that on or about November 12, 2013, after having defaulted on its notes, PTA and certain affiliated debtors filed voluntary petitions under chapter 11 of the United States Bankruptcy Code.

108.    Defendants deny the allegations set forth in paragraph 108 of the Complaint, except admit and aver upon information and belief that the majority of bondholders who are beneficiaries of the Litigation Trust and received equity in the reorganized debtor have now been paid in full and have suffered no legally cognizable loss or damages.

109.    Defendants admit the allegations set forth in paragraph 109 of the Complaint.

110.    Defendants repeat and re-allege their responses to paragraphs 1-109 above in response to paragraph 110 of the Complaint.

111.    Defendants deny the allegations set forth in paragraph 111 of the Complaint, except admit that on April 20, 2012, Physiotherapy Holdings, Inc. transferred funds to Wells Fargo Bank, National Association, as paying agent, which transferred funds to Water Street, Wind Point, and other shareholders on account of their equity interests.

112.    Defendants deny the allegations set forth in paragraph 112 of the Complaint.

113.    Defendants deny the allegations set forth in paragraph 113 of the Complaint.

114.    Defendants deny the allegations set forth in paragraph 114 of the Complaint.

115.    Defendants admit the allegations set forth in paragraph 115 of the Complaint.

116.    The allegation set forth in paragraph 116 of the Complaint constitutes a legal conclusion to which no response is required.  To the extent a response is required, Defendants

lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 116 of the Complaint.

117.    The allegation set forth in paragraph 117 of the Complaint constitutes a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in paragraph 117 of the Complaint.

118.    Defendants deny the allegations set forth in paragraph 118 of the Complaint.

119.    Defendants repeat and re-allege their responses to paragraphs 1-118 above in response to paragraph 119 of the Complaint.

120.    Defendants deny the allegations set forth in paragraph 120 of the Complaint, except admit that on April 20, 2012, Physiotherapy Holdings, Inc. transferred funds to Wells Fargo Bank, National Association, as paying agent, which transferred funds to Water Street, Wind Point, and other shareholders on account of their equity interests.

121.    Defendants deny the allegations set forth in paragraph 121 of the Complaint.

122.    Defendants deny the allegations set forth in paragraph 122 of the Complaint.

123.    Defendants deny the allegations set forth in paragraph 123 of the Complaint.

124.    Defendants admit upon information and belief the allegations set forth in paragraph 124 of the Complaint.

125.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 125 of the Complaint.  Wind Point Investors IV, L.P., as general partner, is liable for all matters chargeable to Wind Point Partners IV, L.P. and Wind Point Executive Advisor Partners, L.P. in connection herewith.

126.    Defendants deny the allegations set forth in paragraph 126 of the Complaint, except admit that Wind Point Investors IV, L.P. is the general partner of Wind Point Partners IV, L.P. and Wind Point Executive Advisor Partners, L.P.

127.    Defendants deny the allegations set forth in paragraph 127 of the Complaint.

128-132.   Defendants state that no response is required to the allegations with respect to alleged "subsequent transferees" set forth in paragraphs 128-132 (Count III) of the Complaint, because, upon information and belief, Plaintiff has dismissed from this action without prejudice all of the alleged "subsequent transferees" that received distributions from Water Street and the vast majority of those who received distributions from Wind Point through notices of voluntary dismissal filed by the Litigation Trust pursuant to the *Court's Order Approving Stipulation Regarding Service and Time to Respond to the Complaint Filed by the PAH Litigation Trust Against Alleged Subsequent Transferees dated October 2, 2015* (the "October 2015 Order").  To the extent that responses are required, Defendants deny the allegations set forth in paragraphs 128-132 of the Complaint.

133.    Defendants repeat and re-allege their responses to paragraphs 1-132 above in response to paragraph 133 of the Complaint.

134.    Defendants deny the allegations set forth in paragraph 134 of the Complaint, except admit that on April 20, 2012, Physiotherapy Holdings, Inc. transferred funds to Wells Fargo Bank, National Association, as paying agent, which transferred funds to Water Street, Wind Point, and other shareholders on account of their equity interests.

135.    Defendants deny the allegations set forth in paragraph 135 of the Complaint.

136.    Defendants deny the allegations set forth in paragraph 136 of the Complaint.

137.    Defendants deny the allegations set forth in paragraph 137 of the Complaint.

138.    Defendants admit the allegations set forth in paragraph 138 of the Complaint.

139.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 139 of the Complaint.

140.    Defendants deny the allegations set forth in paragraph 140 of the Complaint, except admit that Wind Point Investors IV, L.P. is the general partner of Wind Point Partners IV, L.P. and Wind Point Executive Advisor Partners, L.P.

141.    Defendants deny the allegations set forth in paragraph 141 of the Complaint.

142.    Defendants repeat and re-allege their responses to paragraphs 1-141 above in response to paragraph 142 of the Complaint.

143.    Defendants deny the allegations set forth in paragraph 143 of the Complaint. except admit that on April 20, 2012, Physiotherapy Holdings, Inc. transferred funds to Wells Fargo Bank, National Association, as paying agent, which transferred funds to Water Street, Wind Point, and other shareholders on account of their equity interests.

144.    Defendants deny the allegations set forth in paragraph 144 of the Complaint.

145.    Defendants deny the allegations set forth in paragraph 145 of the Complaint.

146.    Defendants deny the allegations set forth in paragraph 146 of the Complaint.

147.    Defendants admit the allegations set forth in paragraph 147 of the Complaint.

148.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 148 of the Complaint.

149.    Defendants deny the allegations set forth in paragraph 140 of the Complaint, except admit that Wind Point Investors IV, L.P. is the general partner of Wind Point Partners IV, L.P. and Wind Point Executive Advisor Partners, L.P.

150.    Defendants deny the allegations set forth in paragraph 150 of the Complaint.

151-155.  Defendants state that no response is required to the allegations with respect to alleged "subsequent transferees" set forth in paragraphs 151-155 (Count VI) of the Complaint, because, upon information and belief,  Plaintiff has dismissed from this action without prejudice all of the alleged "subsequent transferees" that received distributions from Water Street and the

vast majority of those who received distributions from Wind Point through notices of voluntary dismissal filed by the Litigation Trust pursuant to the Court's October 2015 Order.

156.    Defendants repeat and re-allege their responses to paragraphs 1-155 above in response to paragraph 156 of the Complaint.

157.    Defendants deny the allegations set forth in paragraph 157 of the Complaint.

158.    Defendants deny the allegations set forth in paragraph 158 of the Complaint. except admit that on April 20, 2012, Physiotherapy Holdings, Inc. transferred funds to Wells Fargo Bank, National Association, as paying agent, which transferred funds to Water Street, Wind Point, and other shareholders on account of their equity interests.

159.    Defendants deny the allegations set forth in paragraph 159 of the Complaint.

160.    Defendants deny the allegations set forth in paragraph 160 of the Complaint.

161.    Defendants deny the allegations set forth in paragraph 161 of the Complaint.

162.    Defendants admit the allegations set forth in paragraph 162 of the Complaint.

163.    The allegation set forth in paragraph 163 of the Complaint constitutes a legal conclusion to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 163 of the Complaint

164.    Defendants deny the allegations set forth in paragraph 164 of the Complaint, except admit that Wind Point Investors IV, L.P. is the general partner of Wind Point Partners IV, L.P. and Wind Point Executive Advisor Partners, L.P.

165.    Defendants deny the allegations set forth in paragraph 165 of the Complaint.

166-171.  Defendants state that no response is required to the allegations with respect to alleged "subsequent transferees" set forth in paragraphs 166-171 (Count VIII) of the Complaint, because, upon information and belief, Plaintiff has dismissed all of the alleged "subsequent

transferees" that received distributions from Water Street and the vast majority of those who received distributions from Wind Point from this action without prejudice through notices of voluntary dismissal filed by the Litigation Trust pursuant to the October 2015 Order.

## PRAYER FOR RELIEF

The allegations following paragraph 171 of the Complaint are Plaintiff's prayer for relief, which requires no response.  To the extent a response is required, Defendants deny all allegations and deny that Plaintiff is entitled to the relief sought or to any relief whatsoever.

## JURY TRIAL DEMAND

The allegations following Plaintiff's prayer for relief is Plaintiff's request for a jury trial, which requires no response.  Defendants reserve all rights with respect to whether Plaintiff is entitled to a jury trial in this action.

## DEFENSES

Defendants hereby set forth the following defenses, without admitting that any of them technically are "affirmative defenses" and/or that Defendants bear the burden of proof or persuasion with respect to any of these defenses.  Defendants reserve the right to amend this Answer to assert additional defenses that become known to them through discovery or otherwise.

## FIRST DEFENSE

1.     The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

2.     The Litigation Trust lacks standing to pursue any claims on behalf of Senior Noteholders, since, among other things, the Senior Noteholders did not possess any right to assert state law constructive fraudulent transfer claims on their own behalf when the Litigation Trust was created, and this no valid assignment of such purported claims occurred.

31713267v1

### THIRD DEFENSE

3.      In or about March 2016, the reorganized debtor was sold to Select Medical Corporation in a merger transaction for a reported value of approximately $400 million in cash, almost double the amount of prepetition debt that was owed to the holders of Senior Notes, who had received 100% of the equity of the reorganized debtor under PTA's confirmed plan of reorganization.  Under the plan all other creditors of PTA were paid in full.  Accordingly, as a result of the sale to Select Medical Corporation (and settlements into which the Litigation Trust has entered), all creditors (including the holders of Senior Notes who assigned their claims to the Litigation Trust), other than Senior Noteholders who sold their New Common Stock prior to the Select Medical transaction and have not received proceeds in excess of their allowed claims, have been paid in full and have no continuing loss or damage they may seek to recover under fraudulent transfer law.  Any award to Plaintiff would constitute unjust enrichment.

### FOURTH DEFENSE

4.      The claims the Litigation Trust is now pursuing on behalf of holders of Senior Notes who held their new Common Stock until the Select Medical transaction have been rendered moot as a result of the sale to Select Medical Corporation (and settlements into which the Litigation Trust has entered).  Any award to Plaintiff on behalf of Senior Noteholders who have received proceeds in excess of their allowed claims would constitute unjust enrichment.

### FIFTH DEFENSE

5.      Neither Defendants nor the critical mass of PTA's Board of Directors who approved the Court Square Transaction did so with actual intent to hinder, delay or defraud creditors.

**SIXTH DEFENSE**

6.      The holders of Senior Notes on whose behalf the Litigation Trust is purporting to sue were not in privity with, and did not receive or reasonably rely upon any representations or warranties made by Wind Point or anyone acting or purporting to act on Wind Point's behalf before deciding to provide financing to Court Square.

**SEVENTH DEFENSE**

7.      All state law claims for constructive fraudulent transfer have been implicitly preempted by section 546(e) of the Bankruptcy Code, or, alternatively, should be dismissed because PTA was neither insolvent nor rendered insolvent as a result of the Transaction.

8.      All constructive fraudulent transfer claims  based on state law or section 548(a)(1)(B) of the Bankruptcy Code should be dismissed pursuant to section 546(e) of the Bankruptcy Code because, among other things, at the time of the alleged transfers Defendants were financial institutions, financial participants and/or stockbrokers within the meaning of the statutory safe harbor.

**EIGHTH DEFENSE**

9.      Plaintiff's claims are barred by the doctrines of ratification, estoppel, laches, waiver and consent.

**NINTH DEFENSE**

10.      Plaintiff's claims are barred as the result of a prepetition settlement and voluntary release of claims by the Debtor against Wind Point in December 2012.

**TENTH DEFENSE**

11.      To the extent Debtors were solvent, Plaintiff may not avoid as constructive fraudulent transfers payments to or for the benefit of Wind Point in connection with the Transaction.

31713267v1

## ELEVENTH DEFENSE

12.    To the extent Defendants have filed valid proofs of claim, or are entitled to an administrative claim against the Debtors, Plaintiff may not avoid payments to Water Street, and Defendants reserve their rights to set-off any of their claims against such payments

## TWELFTH DEFENSE

13.    The Defendants took in good faith for value.

## THIRTEENTH DEFENSE

14.    As a result of the sale of PTA to Select Medical Corporation (and settlements into which the Litigation Trust has entered), all creditors (including the holders of Senior Notes who assigned their claims to the Litigation Trust) have been paid in full and therefore the alleged transfers are not recoverable under section 550 of the Bankruptcy Code.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Defendants respectfully request that judgment be entered in their favor and against Plaintiffs, and that Defendants be awarded such other and further relief as the Court deems just and proper, including an award of attorneys' fees, costs and expenses.


Dated:  June 4, 2018                                    By: /s/    J. Cory Falgowski
                                                              J. Cory Falgowski (No. 4546)
                                                              **BURR & FORMAN LLP**
                                                              1201 N. Market St., Suite 1407
                                                              Wilmington, DE 19801
                                                              Telephone: (302) 830-2312
                                                              Email: jfalgowski@burr.com

                                                                   - and –

Brian D. Roche (*pro hac vice*)
James A. Rolfes (*pro hac vice*)
Michael S. Leib (*pro* hac vice)
**REED SMITH LLP**
10 S. Wacker Drive
Chicago, Illinois 60606-7507
Telephone: (312) 207-6490
Email: broche@reedsmith.com
      jrolfes@reedsmith.com
      mleib@reedsmith.com

- and –

Robert A. Van Nest, Esquire
David J. Silbert, Esquire
Ajay S. Krishnan, Esquire
Erin E. Meyer, Esquire
Abraham Fine, Esquire
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA  94111-1809
Email:  rvannest@keker.com
      dsilbert@keker.com
      akrishnan@keker.com
      emery@keker.com
      afine@keker.com

*Attorneys for Wind Point Entities*